WILLIAM R. PATRICK ET AL., APPELLANTS, v. CITY OF
BELLEVUE, APPELLEE.

82 N. W. 2d 274

Filed April 5, 1957. No. 34119.

*William R. Patrick* and *Smith & Smith,* for appellants.

*John E. Rice* and *Dixon G. Adams,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

The purpose of this action was to enjoin appellee from maintaining and operating its public city dump in such a manner as to cause many different and objectionable kinds of waste materials to be transported to and deposited upon lands of appellants and to recover damages for loss of the use of the land and loss of crops thereon caused by the deposit of the objectionable materials from the dump upon the land. The order of the trial court dismissing certain parties out of this case during the trial became final in that court. The contesting parties on this appeal are appellants and the city of Bellevue, designated appellee.

The following is the substance of the petition of appellants:

Appellants owned the real estate described. Appellee had for 3 years or more used a ravine located on Tax Lot 8-B in Section 35 about one-half mile east of the land of appellants as a public garbage dump in which had been deposited garbage accumulated daily in the

city of Bellevue consisting of many kinds of objectionable materials and miscellaneous insoluble substances. The ravine was part of a natural drainage course for surface waters for a large watershed contiguous thereto which in times of rainfall or melting snow flowed westerly in the drainage course to State Highway No. 75, which is immediately adjacent to the east line of the land of appellants; normally to and through a culvert in the highway; and southerly in the road ditches paralleling the highway. There was on or about June 22, 1949, a rainstorm in the area during which large quantities of waste materials of the character above referred to were carried and transported from the dump in the drainage course to the culvert which was obstructed and closed thereby and because thereof floodwaters and waste materials from the dump were diverted across the highway to and upon the lands of appellants, inundating 15 acres of growing corn thereon and creating a condition which prevented further cultivation of the crop and caused its total loss. The flooding of the land impaired the utility thereof. Within 4 years of the commencement of this case large quantities of material placed in the dump of the kinds herein referred to were carried to and spread upon pasture land of appellants by waters flowing in the drainage course. They have prevented cultivation or the mowing or clearing of the land of willows and noxious weed growths and have destroyed the utility of about 40 acres thereof for any useful or profitable purpose. The proximate result of the acts of appellee has been damage to appellants in the sum of $2,500.

The parts of the foregoing appropriate to the second cause of action of the petition were included therein by reference. It was further stated therein that parts of the land were leased for the year 1949 for a crop share rental of two-fifths of the crops produced. The acts of appellee destroyed the utility of 15 acres of the land and the crop thereon and caused the tenants damage in the

amount of $50 per acre. They expended time and labor in the preparation and planting of the crop and for seed and cultivation thereof before the flooding by the waters which were of the reasonable value of $150. The cause of action of the lessees was assigned to appellants. Appellants ask that appellee be enjoined from maintaining and operating the city dump referred to in the foregoing and sought judgment for damages in the sum of $3,400.

A supplemental petition stated an additional claim of damage. The substance thereof is the following: The appellee has since June 1949 continued to dump large quantities of waste materials in the ravine and on the premises used as the city dump. A heavy rain in that locality on or about May 8, 1950, caused large quantities of waste material from the dump to be washed to and upon the lands of appellants and large quantities of floodwaters to be diverted thereon because of the obstruction of the culvert in the course of drainage with the result that the utility of the lands was destroyed for any useful or gainful purpose and appellants were thereby damaged in the sum of $1,500 for which they also ask judgment.

The district court found that appellants were not entitled to recover damages from appellee because the maintenance by it of a free dump site for the city and its inhabitants was the performance of a governmental function and not a corporate or proprietary function and the city was not liable therefor since no issue of maintenance of a public nuisance was involved. The city at the trial withdrew resistance to granting an injunction because the dump had been discontinued at the location complained of by appellants. The court granted a permanent injunction as appellants prayed and dismissed the case as to the damage claims of appellants. The motion of appellants for a new trial of the issue as to damages was denied. This appeal is from the judgment dismissing the damage claims of

appellants and the denial of their motion for a new trial.

Appellants were at the times important to this case the owners of Tax Lot 9 in Section 35, Township 14 North, Range 13, and 130 acres in the northern part of the northeast quarter of Section 3, Township 13 North, Range 13, known as the McLane place, in Sarpy County. There were about 19 acres in Tax Lot 9 which adjoined State Highway No. 75 on the west and lies north of a railroad overpass. The McLane place lies south of the overpass and Tax Lot 9 and adjoins the state highway on the west. A culvert across the highway is located in the southern part of Tax Lot 9 and immediately east of the McLane place.

Appellee leased Tax Lot 8-B in Section 35, Township 14 North, Range 13, Sarpy County, in November 1948 and established a free land fill public dump area thereon for the inhabitants of the city to deposit their refuse and waste materials. It was about one-fourth of a mile northeast of the culvert in the highway. The drainway extended past the dump to and through the culvert. The only natural drainage in the area from the dump site was to the culvert, across the highway, and south in a ditch along the west side of the highway past the McLane place. This means of drainage of surface waters had been sufficient prior to June 22, 1949, to protect the land of appellants from flooding. The dump was maintained and used from November 1948 until 1951. Appellee built a dike with step-downs on each side for diverting the water around the main dump area and to prevent carriage of debris by drainage waters. There was no complaint made to appellee prior to June 22, 1949, of any materials from the dump having been washed down to, on the highway, or over it and into the land adjoining the highway.

A rainstorm occurred in that area on that date variously described as a 2-to-3 inch rainfall in a couple of hours and not unusual; as 2 inches or better in a couple of hours but causing no flooding elsewhere; as heavier

than usual; and as so heavy that there was not 10-foot visibility for 20 minutes. The dike or dam in the ravine was broken by the force of the water, materials from the dump were washed down the ravine to the culvert, and the passageway of it was closed. The water and debris backed towards the north a distance of some 200 to 400 feet from the culvert, flowed across the highway onto the land of appellants, and was the proximate cause of damage to them.

The issue of damages was resolved against appellants by the trial court on the basis that appellee in maintaining a free dump site for itself and its inhabitants was performing a governmental, as distinguished from a proprietary, function and was not liable to appellants for any damages sustained by them. This is the defense primarily relied upon by appellee. It has not been determined by this court that such an activity by a municipality is a governmental function. There is respectable authority that the furnishing of facilities for the disposal of garbage and other waste materials by a city for the use of its inhabitants is a governmental function.

In Gordon v. Murray City, 106 Utah 582, 151 P. 2d 193, the court said: "A city, in collecting and disposing of garbage, acts for the public health and is discharging a governmental function."

The statement in Bruce v. Kansas City, 128 Kan. 13, 276 P. 284, 63 A. L. R. 325, is as follows: "Be that as it may, and notwithstanding many authorities to the contrary, we find ourselves in good company when we hold squarely, as we feel compelled to do, that in the maintenance of a free municipal dump where the public were privileged to dispose of waste materials and miscellaneous rubbish and in the burning of such rubbish as was combustible the city was exercising a governmental function * * *."

The court in Kuehn v. City of Milwaukee, 92 Wis. 263, 65 N. W. 1030, in speaking of the status of the city in providing a means for the disposal of garbage,

said: "In that respect, it is like the fire, health, or police departments of cities. In such cases, 'the corporation is engaged in the performance of a public service, in which it has no particular interest, and from which it derives no special benefit or advantage in its corporate capacity, but which it is bound to see performed in pursuance of a duty imposed by law, for the general welfare of the inhabitants or of the community.' "

In 18 McQuillin, Municipal Corporations (3d ed.), § 53.46, p. 267, it is said: "While diversity of judicial views still prevails, late cases generally hold, with some exceptions, that the functions of cleaning of streets, the collection of garbage, and the establishment and maintenance of dumping grounds and incinerators are governmental, rather than proprietary, exercised by the municipality as an administrative agency of the state or for the public in the interest of public health and general welfare * * *." See, also, Annotation, 63 A. L. R. 332.

The acceptance of this doctrine is not decisive of the problem presented by this case. The proof is that appellee provided the dump and maintained it for a public use and that the real estate of appellants was temporarily damaged as a consequence of its existence and use. The hypothesis of appellants is that if a city provides a dump for waste materials, it is for the public and for a public use; that if the city thereby obstructs the natural flow of drainage water which results in damage to the owners of private property by the deposit of debris and floodwaters from the dump, just compensation must be made by the city for the damage; that thereby the private property of the owner is damaged for public use by the city; and that the mandate of the Constitution requires that compensation be made by the city to the owner notwithstanding it was engaged in a governmental function and the use may or may not have been a nuisance.

The fact that the damage suffered by the property

owner was temporary is not important. In Gledhill v. State, 123 Neb. 726, 243 N. W. 909, the state had constructed a temporary bridge across a watercourse on a highway in the place of a steel bridge which had been washed out. Many piles were driven in the watercourse and a sudden thaw caused ice to break up and lodge against the piling resulting in an ice gorge or dam which flooded the water back onto the land of the claimant, causing damages. The action was for the recovery of damages. In deciding the temporary damages were recoverable by virtue of the constitutional provision this court declared: "The fact that the damage in this case was of a temporary nature and caused only by a temporary bridge constructed for the use and convenience of the public does not prevent a recovery. 1 Nichols, Eminent Domain (2d ed.), p. 309, says: 'An entry on private land may constitute a taking, though temporary in its nature and for only a temporary purpose. * * * Accordingly it is held that land or other property cannot be actually put to use by public authority for a temporary purpose without compensating the owner.' * * * In line with this authority and the amendment to our Constitution by the adding of the words 'or damaged,' where one's land is damaged temporarily for public use by the construction of a public improvement by the state, it constitutes such a damage as requires compensation under section 21, art. I of the Constitution." Pierce v. Platte Valley Public Power & Irr. Dist., 143 Neb. 898, 11 N. W. 2d 813, confirms this: "Where one's land is damaged temporarily for public use in the acquiring of an easement by a public corporation for the construction of a transmission line, it constitutes such a damage as requires compensation under section 21, art. I of the Constitution."

The liability for damage of the character described in this case because of the constitutional provision has been considered and discussed in several decisions of this court. Gledhill v. State, *supra,* is one in which this

language appears: "The property of the plaintiff and his assignors was damaged without actual taking by the construction of this temporary public improvement. * * * The bridge constructed was the cause of the damage to the plaintiff and his assignors who owned land upstream from the bridge. The evidence in this case is overwhelming that the beginning of the flood was ·caused by the floating ice cakes in the ditch being held at the bridge. From this point the ice and water backed up for a considerable distance until the ditch was filled, when it overflowed the land and destroyed the dikes which had been constructed at private expense by the landowners. * * * The bridge was so constructed that it obstructed the flow of ice and water and caused the flood. * * * The finding of the trial court that this temporary highway bridge was the cause of this flood and the consequent damage is the only finding possible from the evidence in this case. Is the damage resulting from the construction of this bridge such as would entitle the plaintiff to just compensation? The property of the plaintiff and his assignors was damaged without actual taking by the construction of a temporary public improvement. Since the insertion of the words 'or damaged' in section 21, art. I of the Constitution of 1875, it has been the well-settled law in this state that one whose property was damaged without actual taking was entitled to just compensation. * * * The constitutional provision embraces the damages which affect the value of a person's property and include such damages as were sustained in the case under consideration. No good reason suggests itself which would prevent the plaintiff recovering the damages sustained in this case." The facts in that case were quite similar to those in the present case. It is persuasive authority that appellants are within the protection of the constitutional provision as to any damage caused them by the acts of appellee complained of herein.

In Scully v. Central Nebraska Public Power & Irr.

Dist., 143 Neb. 184, 9 N. W. 2d 207, this court remarked significantly concerning the Gledhill case in this manner: "It appears from a careful reading of the case that the plaintiff's property rights had been directly invaded by the state through the improper construction of this temporary bridge, by reason of which the plaintiff sustained property damage by the flooding of his land, which was special damage not suffered by the public at large."

Snyder v. Platte Valley Public Power & Irr. Dist., 144 Neb. 308, 13 N. W. 2d 160, 160 A. L. R. 1154, referred to a situation reflected by these facts: Defendant had acquired a right-of-way across land adjoining that of plaintiff on the south and had erected thereon a canal for the transportation of water. South of the right-of-way was a drainage canyon whose outlet to the north crossed the right-of-way and entered onto part of plaintiff's land. Defendant erected a concrete flume from south to north across its right-of-way. Plaintiff claimed that prior to the construction of the flume the water diffused over her land and irrigated it but that afterwards the water entered her land in a narrow channel and damaged it. It is said in the opinion in that case: "One of the incidents of taking property by eminent domain is that not only is the condemnor liable to compensate for the taking but also is liable in this jurisdiction, by virtue of section 21, art. I of the Constitution of the state, for consequential damage to other property in excess of the damage sustained by the public at large. * * * (Many authorities cited.) In City of Omaha v. Kramer, supra, (25 Neb. 489, 41 N. W. 295, 13 Am. S. R. 504) the following significant statement is found: 'Section 21, article I, of the constitution of this state provides that, "The property of no person shall be taken or damaged for public use without just compensation therefor." The section above taken, except the words "or damaged," was in the constitution of 1867. Under that constitution, * * * if none of his real estate was taken for public use he could recover nothing, although

his property had been greatly damaged by such use. The provision, therefore, is remedial in its nature, and the well known rule that, in the construction of remedial statutes three points are to be considered, viz., the old law, the mischief, and the remedy, and so to construe the act as to suppress the mischief and advance the remedy, is to be applied. 1 Blackstone Com., 87. Applying this rule to the provision in question, and it embraces all damages which affect the value of a person's property, and includes cases like that under consideration.' * * * It therefore follows that although the portion of the right of way on which the flume was constructed is not over and across the lands of plaintiff yet she may have her action against the defendant for damages. * * * The wrong and damage was in violation of the Constitution."

In Schmutte v. State, 147 Neb. 193, 22 N. W. 2d 691, is this language: "Section 21, article I, of the Constitution prohibits the state from damaging property for public use without compensation. * * * The fact that the state is not liable for the negligence of its officers, agents, and employees does not excuse it from liability for the taking or damaging of property which was or could have been done under its powers of eminent domain. * * * One whose property is damaged without actual taking is entitled to just compensation."

It is stated in Gruntorad v. Hughes Bros., Inc., 161 Neb. 358, 73 N. W. 2d 700: "In Austin v. Village of Tonka Bay, 130 Minn. 359, 153 N. W. 738, the court discussed and cited numerous cases and then said: 'The above cases are all against cities; none of them is against a county. But the logic of all of them is to the effect that the municipality which invades the right conferred upon the property owner by the Constitution must respond in damages therefor.' " There are many authorities cited in support of that statement.

In Jacobs v. City of Seattle, 93 Wash. 171, 160 P. 299, L. R. A. 1917B 329, the court declared: "The disposal

of garbage may be a proper governmental function, granted by legislative enactment; but, conceding it to be so, the function must be exercised with due regard to constitutional limitations. Our constitution (art. 1, § 16) explicitly provides that private property shall not be damaged for public use 'without just compensation having been first made, or paid into court for the owner.' The complaint in this case sets forth the injury to the property of appellants arising from the erection, maintenance and operation of respondent's plant for the disposal of garbage on land adjoining that of the appellants * * *. The complaint does not seek to charge negligence of the respondent or its employees in the performance of governmental duties, in which case the municipality might be absolved from liability. The first cause of action is founded on the higher ground of the taking or injury to property without just compensation. The authorities sustain the right of recovery in such cases."

The causes of action for damage presented in this case are within the reach of the constitutional provision that the property of no person shall be taken or damaged for public use without just compensation therefor. The decision of the district court to the contrary may not be sustained.

Appellee complains that the case was brought and presented to the district court on the basis of negligent or wrongful acts by joint defendants and after the close of the trial appellants attempted to change their theory of the case to one that appellee was liable in damages because of the constitutional provision prohibiting damage to private property for public use without just compensation therefor. Appellants did not plead that the city was negligent, that it had created or was maintaining a nuisance, or the constitutional provision above recited. Appellants did plead the establishment and maintenance of the dump, the rainstorm, and the damages claimed to have resulted therefrom. They were not required to make reference to the constitutional pro-

vision in their pleadings to have the benefit of it if the facts proven were sufficient to justify the application of it for their benefit. Gledhill v. State, *supra*; Snyder v. Platte Valley Public Power & Irr. Dist., *supra*.

The record shows that 19 acres of corn were totally destroyed by flooding of the land on June 22, 1949. It was a growing, unmatured crop. There was evidence that the land was very productive and in prior years had generally produced a good crop of 50 to 60 bushels of corn per acre. There is no evidence as to the amount of corn that was produced on adjoining land or land in that vicinity during the year 1949. There was an estimate, based upon doubtful foundation, that the 19 acres would probably have produced 1,000 bushels that year if the growing corn had not been destroyed. The measure of damages to a growing crop that is destroyed by wrongful act or omission of another is the value of it at the time of destruction. Gable v. Pathfinder Irr. Dist., 159 Neb. 778, 68 N. W. 2d 500. Damage based upon the value of an unmatured crop is analagous to profits lost and is governed by the same rule precluding recovery in cases of either uncertainty or remoteness. The question of whether damage based on the destruction of an unmatured crop is speculative is decided by whether there is sufficient data to determine with reasonable certainty the probable value it would have had if it had matured. Gledhill v. State, *supra*; Ricenbaw v. Kraus, 157 Neb. 723, 61 N. W. 2d 350. The proof is not sufficient to permit a determination, with reasonable certainty, of the value of the crop of corn that it is alleged was destroyed. Appellants claim that the utility of a part of what is spoken of as the McLane place was destroyed during a period of 3 years. The quantity of the land affected is not shown with reasonable certainty. It is variously referred to as comprising an area from 20 to 40 acres. There is no competent or sufficient evidence as to the amount of the loss to the owners within any legal measure of damage. A determination of the

issue of damage in this court as it is presented would be conjectural and speculative. The record will not permit a determination of the issue by this court.

The judgment granting a permanent injunction in this cause should be and it is affirmed. The judgment as to all other matters should be and it is reversed and the cause is remanded to the district court for Sarpy County for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED.