PAUL UHING AND CLARENCE UHING, APPELLANTS, V. CITY OF OAKLAND, NEBRASKA, APPELLEE.

459 N.W.2d 187

Filed August 10, 1990.    No. 88-355.

Robert D. Moodie, of Moodie & Moodie, for appellants.

William J. Dunn, of Gross, Welch, Vinardi, Kauffman & Day, P.C., and Clarence E. Mock for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This is an appeal from an order of the Burt County District Court granting partial injunctive relief, but refusing to order money damages. The plaintiffs appeal. We affirm in part, reverse in part, and remand with instructions.

On February 11, 1985, the plaintiffs, Clarence and Paul Uhing, filed an amended petition in the Burt County District Court, alleging that the defendant, the City of Oakland, Nebraska, in 1983 "wrongfully and unlawfully" altered one culvert and placed several others in such a way as to cause runoff water to drain onto and damage plaintiffs' land. Plaintiffs sought a permanent injunction enjoining defendant from maintaining these culverts and sought damages for, inter alia, lost crops and decreased value of the farmland. Evidence was presented to the court. The trial court, apparently relying on common law and statutory theories of liability, found that plaintiffs failed to show by a preponderance of the evidence that defendant was negligent in the construction and maintenance of the culvert system. The trial court did not consider whether a "taking" had occurred. The trial court did order, however, that a culvert running under a driveway be removed or enlarged to facilitate the unimpeded flow of water between culverts on either side of the driveway.

Plaintiffs appeal to this court, contending, in sum, that the trial court erred in failing to grant the requested injunctive relief, failing to find that the plaintiffs have proven money damages, and failing to find that the defendant has taken private property without the payment of just compensation.

In this appeal we focus solely on whether the defendant has taken private property for public benefit without the payment of just compensation. Defendant maintains that a theory of inverse condemnation was not pled in plaintiffs' petition. We disagree. In *Kula v. Prososki*, 219 Neb. 626, 365 N.W.2d 441 (1985), plaintiff filed a petition seeking injunctive relief and damages. Plaintiff alleged that the adjoining landowners, who were named as defendants, filled in a natural watercourse, causing surface waters to back onto plaintiff's land. Plaintiff also alleged that Nance County and East Newman Township, also named as defendants, raised the adjoining highway and installed inadequate culverts so as to cause floodwaters to dam onto his land. The trial court granted the injunctive relief against the adjoining landowners and Nance County, but denied damages because the plaintiff failed to comply with the Nebraska Political Subdivisions Tort Claims Act, and because

the action had not been properly brought as an inverse condemnation case. It was conceded on appeal that plaintiff had not complied with the Political Subdivisions Tort Claims Act. We considered the inverse condemnation issue:

We assume the district court, in ruling that the case had not properly been brought as an inverse condemnation action, relied on Neb. Rev. Stat. § 76-705 (Reissue 1981). That section provides:

"If any condemner shall have taken or damaged property for public use without instituting condemnation proceedings, the condemnee, *in addition to any other available remedy*, may file a petition with the county judge of the county where the property or some part thereof is situated to have the damages ascertained and determined." (Emphasis supplied.) That procedure was not followed in this instance. That statute became effective in 1951.

However, Neb. Const. art. I, § 21, provides that "[t]he property of no person shall be taken or damaged for public use without just compensation therefor." When private property has been damaged for public use, the owner is entitled to seek compensation in a direct action under that constitutional provision. *Beach v. City of Fairbury*, 207 Neb. 836, 301 N.W.2d 584 (1981).

That section of the Constitution is self-executing, and legislative action is not necessary to make the remedy available. *Gentry v. State*, 174 Neb. 515, 118 N.W.2d 643 (1962). The fact that the plaintiff could have sued in tort under the Political Subdivisions Tort Claims Act does not preclude him from proceeding in a direct action for damages under the Constitution. *City of Omaha v. Matthews*, 197 Neb. 323, 248 N.W.2d 761 (1977).

Additionally, a landowner is not precluded from bringing an action for a mandatory injunction against public authorities to prevent damage to the owner's land caused by a public improvement when the public authorities have declined to exercise their right of eminent domain. Also, the plaintiff had the right to join with his action for equitable relief his claim for temporary

damages. *Armbruster v. Stanton-Pilger Drainage Dist.*, 165 Neb. 459, 86 N.W.2d 56 (1957).

It is not indispensable that the constitutional provision be set out or its existence alleged in the petition stating the cause of action. *Patrick v. City of Bellevue*, 164 Neb. 196, 82 N.W.2d 274 (1957). All that is necessary is that the litigant allege and prove facts constituting a cause of action because of it. Neb. Rev. Stat. § 25-804 (Reissue 1979). Therefore, it is necessary to consider both the pleadings and evidence to determine whether a cause of action for property damaged for a public use existed.

219 Neb. at 628-29, 365 N.W.2d at 442-43.

We determined that the plaintiff alleged and proved sufficient facts to require the trial court to consider damages under a theory of inverse condemnation. We reversed and remanded for further proceedings.

In the present case the plaintiffs, through their petition, alleged that the defendant, a municipal corporation, wrongfully and unlawfully altered and constructed a series of culverts which diverted the flow of drainage water so as to injure their land. It was not necessary that the constitutional provision be alleged in the petition. *Kula v. Prososki, supra.* Plaintiffs have adequately alleged that their land has been damaged or taken for a public benefit without just compensation.

It remains to be determined whether the facts establish a basis for relief. In an appeal of an equity action, this court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court; provided, where the credible evidence is in conflict on a material issue of fact, we consider and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. In its de novo review of the record, this court is guided by the rule that a party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle the claimant to relief. *Stuthman v. Adelaide D. Hull Trust*, 233 Neb. 586, 447 N.W.2d 23 (1989).

We have reviewed the record de novo and make the following

findings of material fact. The area which has been damaged is part of a 265-acre tract of land located to the north and west of Oakland, Nebraska. This land is owned by the plaintiffs, who purchased it in 1978. They have farmed the land continuously since 1979.

The tract of land and the surrounding area is drained by a series of culverts and drainage ditches. Although there were some additions and an alteration done by defendant in 1982 and 1983 as discussed below, the area in question and the culverts as they existed in 1986, the time of the trial, are shown in the diagram on the following page. The corner boundaries of plaintiffs' land are indicated by X's. Culvert 1 is a 3-foot-high by 10-foot-4-inch-long box culvert that runs east and west under Charge Avenue (U.S. Highway 77). Culvert 2 is 18 inches in diameter and runs east and west under a private drive. Culvert 3 is 48 inches in diameter and runs north and south under 9th Street. Culvert 4 is 24 inches in diameter and runs east and west 1,100 feet along and under 9th Street. Culvert 5 is 27 inches in diameter, with a 33-inch-diameter extension. Culvert 6 is actually two culverts, both 24 inches in diameter, with 30-inch-diameter extensions. Culvert 7 is also two culverts, one a 59-inch-wide by 67-inch-high oval pipe culvert and the other a 72-inch-wide by 86-inch-high oval pipe culvert, having extensions of 10 feet and 15 feet in diameter respectively. Culverts 5, 6, and 7 run east and west under the railroad tracks. The evidence is not clear as to which railroad owns the tracks on the diagram.

In 1982 and 1983 the defendant altered one culvert and added two others. In 1982 defendant installed culvert 2 under a private driveway. In 1983, as part of a drainage project, the city installed culvert 4 and placed a concrete plug in culvert 3, which is immediately adjacent to culvert 4. The plug extends from the flow line (the bottom) of the culvert to a point approximately 15 inches from the top of the culvert. The top of the plug is approximately 4 inches above the top of culvert 4. Culvert 4 runs under the ground along 9th Street; runs under Thomas Avenue, Commercial Avenue, and the railroad tracks; and empties into a county right-of-way along 9th Street. The land to the immediate west of the east end of culvert 4 is higher in

elevation than the east end of culvert 4.

Prior to the changes in 1982 and 1983, water which flowed through culvert 1 would flow unimpeded through culvert 3, and through the City of Oakland. After 1983, drainage water which leaves culvert 1 flows to culvert 2. Most of this water will travel through this culvert to culverts 3 and 4. However, during periods of peak flow, the water will pool on the east side of culvert 2. When the water reaches a sufficient depth it will move in a north to northwest direction, then flow west on 10th Street, then north along the railroad tracks, eventually flowing over the railroad tracks or through culvert 6 and onto plaintiffs' land. Water which reaches culverts 3 and 4 will flow through culvert 4 due to the plug in culvert 3 which prevents water from flowing south into Oakland. All the water which flows through culvert 4 is deposited in the county right-of-way immediately north of, and parallel to, 9th Street. This county right-of-way runs to Logan Creek, at the west end of plaintiffs' property line. From the end of culvert 4 the right-of-way slopes down toward the west for a distance of approximately 300 to 400 feet. At that point, the right-of-way and the surrounding land which is owned by plaintiffs flattens out for the remaining distance to Logan Creek. The water which flows through culvert 4 will be deposited in the right-of-way and on plaintiffs' land due to the flat area, where it will stand for extended periods of time, causing crop damage.

Although plaintiffs had some problems with standing water and wet fields prior to 1982, it is clear that the land receives more water and is more difficult to farm since the defendant altered the drainage system in 1982 and 1983. Little or no water now flows into the City of Oakland due to the size and positioning of culvert 2 and the plug in culvert 3. Runoff water which in the past would flow through culvert 3 is now being diverted onto plaintiffs' land, causing damage to crops and decreasing land value. It is equally clear that the drainage changes were for a public benefit. Defendant's former street superintendent testified that

> there was a drainage area that came into Oakland from the northeast corner of town and traversed down the entire length of the city, and there were problems with standing

water from time to time — health-type problems. There was also a problem with heavy water flows at times causing debris and such to plug the undercrossings under streets and there was some concern about safety for small children and such.

The plaintiffs have shown by a preponderance of the evidence that portions of their land have been damaged for a public use or benefit. With regard to injunctive relief, plaintiffs prayed in their petition for a permanent injunction enjoining defendant from maintaining culvert 2, maintaining the plug in culvert 3, and maintaining culvert 4. We affirm that part of the trial court's order that culvert 2 be enlarged or removed so as to permit water to flow unimpeded from culvert 1 in a westerly direction to culverts 3 and 4. We also hold, however, that the trial court erred in failing to enjoin defendant from maintaining the plug in culvert 3. If the plug in that culvert is not removed, the majority of water flowing to culverts 3 and 4 will flow through culvert 4 and eventually onto plaintiffs' land. The plug in culvert 3 must be removed to allow at least some of the water to flow through culvert 3 and away from plaintiffs' land. Without going so far as to order that culvert 4 be plugged or removed, we hold further that the trial court should retain jurisdiction of this matter to ensure that the relief granted in this appeal is effective in alleviating the problem of excess drainage water depositing on plaintiffs' land.

There was evidence presented at trial that deepening the county right-of-way near the flat land where water spills onto plaintiffs' land would facilitate the flow of water from culvert 4 into Logan Creek. This right-of-way, however, is owned by Burt County, which is not a party to this action. In addition, the culverts which are owned and maintained by a railroad may unlawfully contribute to the flow of water onto plaintiffs' land. The railroad, however, was also not made a party to this action.

With respect to damages for crop loss, the trial court found:

> Plaintiffs have failed to prove by a preponderance of the evidence the nature and extent of damages suffered as the proximate result of the construction and maintenance of culvert 2 or any part of the drainage project and this Court is unable to determine what damages, if any,

resulted from the water flowing from the ponding behind culvert 2, or from the water flowing through culvert 4.

We agree with the trial court that plaintiffs failed to prove the extent to which defendant's actions have damaged plaintiffs' crops. The evidence is clear that plaintiffs' land receives more water as a result of defendant's actions in diverting the flow of drainage water. The evidence is also clear, however, that plaintiffs' land would periodically experience some drainage problems before the changes in 1982 and 1983. Plaintiffs have failed to demonstrate the extent to which the additional drainage water has injured their crops.

In light of our holdings above, it would be premature to discuss whether plaintiffs' land has been permanently damaged. The injunctive relief may eliminate the condition leading to the alleged decrease in value.

Accordingly, the order of the Burt County District Court is affirmed in part and reversed in part, and the cause is remanded with directions.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

SHANAHAN, J., concurs.