UNIVERSAL UNDERWRITERS INSURANCE COMPANY, A CORPORATION, APPELLANT, V. FARM BUREAU INSURANCE COMPANY OF NEBRASKA, A CORPORATION, APPELLEE.

498 N.W.2d 333

Filed April 9, 1993.  No. S-91-071.

Jack Zitterkopf and John B. McDermott, of McDermott, Depue & Zitterkopf, for appellant.

Daniel L. Lindstrom, of Jacobsen, Orr, Nelson, Wright, Harder & Lindstrom, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

LANPHIER, J.

Platte Valley Auto Mart, Inc. (Auto Mart), loaned Jenny Wichelt a 1988 Dodge Aries K while her own car was being repaired. While in Wichelt's custody, the loaner car was damaged to the extent of $5,581.79. Auto Mart's insurer, Universal Underwriters Insurance Company, plaintiff-appellant, paid Auto Mart for the damage and sought to subrogate against Wichelt's insurer, Farm Bureau Insurance Company of Nebraska, defendant-appellee, in the district court for Dawson County. Plaintiff later dismissed the subrogation claim and initiated a declaratory judgment action to determine whether under the terms of its insurance policy it could maintain such a subrogation claim. This is an appeal from a declaratory judgment against plaintiff. We reverse the judgment and remand the cause.

## FACTS

The case was submitted on stipulated facts. Plaintiff's insured is Auto Mart, a licensed automobile dealer engaged in the business of selling and repairing autos. On December 1, 1988, defendant's insured, Wichelt, brought her vehicle into Auto Mart for repair. Auto Mart loaned Wichelt a 1988 Dodge Aries K for her use while her vehicle was being repaired. This loaner car was not registered separately by Auto Mart, but was operated under dealer plates.

Later that same day, Wichelt lost control of the loaner car and landed in a ditch. The vehicle sustained damage in the amount of $5,581.79. After reimbursing Auto Mart for the damage, plaintiff presented Wichelt and her insurance carrier, defendant, with its subrogation claim for the amount stated above.

The issue presented to the district court was whether Wichelt

was an insured under plaintiff's policy covering Auto Mart. The insurance policy covering Auto Mart provides several definitions for the word "insured" which are relevant in this case.

Coverage Part 900 includes coverage for injury and physical damage for losses sustained out of the use of an "OWNED AUTO" or a "TEMPORARY SUBSTITUTE AUTO."

Coverage Part 500 defines insured with respect to "AUTO HAZARD," in part, as "[a]ny other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission."

Additional definitions in the insurance policy will be provided as necessary for the discussion and resolution of the issues.

The district court found that plaintiff could not maintain a subrogation action against defendant's insured because she was an insured person under plaintiff's policy and that under those circumstances, defendant's coverage was excess to plaintiff's coverage on the vehicle. Plaintiff contends the district court erred (1) in finding that Wichelt was an insured under plaintiff's policy of insurance and that therefore a subrogation action against her was untenable and (2) in finding and declaring that defendant's coverage was excess to that of plaintiff.

## STANDARD OF REVIEW

Whether a declaratory judgment action is treated as an action at law or one in equity is to be determined by the nature of the dispute. *Waite v. A. S. Battiato Co.*, 238 Neb. 151, 496 N.W.2d 766 (1991). Here, plaintiff seeks a declaratory judgment permitting it to pursue its subrogation rights against defendant's insured. Subrogation is an equitable doctrine applied in order to avoid unjust enrichment when one party has discharged an obligation which should have been satisfied in whole or in part by another. *Reese v. AMF-Whitely*, 420 F. Supp. 985 (D.C. Neb. 1976). Although the parties in this action contracted for subrogation rights, "[I]f a contractual right of subrogation is merely the usual equitable right which would have existed in any event in the absence of a contract, equitable

principles control subrogation." *Shelter Insurance Co. v. Frohlich, ante* p. 111, 118, 498 N.W.2d 74, 79 (1993). Thus, the nature of the dispute is in equity, and equitable principles apply.

In an appeal of an equity action, this court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where the credible evidence is in conflict on a material issue of fact, we consider and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Waite v. A. S. Battiato Co., supra*; *Citizens State Bank v. Jennings State Bank*, 236 Neb. 307, 461 N.W.2d 78 (1990); *Uhing v. City of Oakland*, 236 Neb. 58, 459 N.W.2d 187 (1990); *Vlasin v. Len Johnson & Co.*, 235 Neb. 450, 455 N.W.2d 772 (1990). However, this case was tried on stipulated facts.

The trial court found generally for defendant and found that Wichelt was an insured under plaintiff's policy. The trial court did not specify under which coverage Wichelt was an insured.

The relevant coverages under which plaintiff insured Auto Mart were the basic auto coverage (Coverage Part 900) and the garage coverage (Coverage Part 500).

### COVERAGE PART 900

Wichelt does not fall under the provisions of the Coverage Part 900. Under that coverage, plaintiff agreed to pay "all sums the INSURED legally must pay as damages . . . because of INJURY to which this insurance applies, caused by an OCCURRENCE arising out of the ownership, maintenance, use loading or unloading of an OWNED AUTO or TEMPORARY SUBSTITUTE AUTO."

This coverage names as an insured "any other person using an OWNED AUTO or TEMPORARY SUBSTITUTE AUTO within the scope of YOUR permission." The Dodge Aries K does not fall under the definition of either owned auto or temporary substitute auto.

### OWNED AUTO

The general conditions section of the policy indicates that each word written in all capital letters is ascribed a specific

meaning under that coverage. In order to fall under the definition of owned auto under Coverage Part 900, the Dodge Aries K would have to be scheduled in the declarations for that coverage part. It is not listed among the autos which are covered under Coverage Part 900.

## TEMPORARY SUBSTITUTE AUTO

The vehicle also does not fall under the definition of temporary substitute auto provided by Coverage Part 900: " 'TEMPORARY SUBSTITUTE AUTO' means an AUTO YOU or a member of YOUR household do not own or LEASE, when it is used temporarily with the owner's permission to replace an OWNED AUTO which is out of service due to its repair, servicing, loss or destruction."

The words "you" and "your" are defined as the person or organization shown in the declarations as the named insured. The definition of temporary substitute auto contemplates the named insured's use of another's vehicle when the owned auto is out of service. The facts of the instant case are different. The vehicle being used was owned by Auto Mart. By definition, the Dodge Aries K was not a temporary substitute auto. In light of the foregoing, Wichelt was not an insured under Coverage Part 900.

## COVERAGE PART 500

The other provision under which defendant claims that Wichelt is an insured is Coverage Part 500. Auto Mart's policy provides that the insurance carrier will pay any sum the "INSURED legally must pay as damages . . . because of INJURY to which this insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD." Auto hazard, as defined under this section, refers, in part, to the use of any auto owned by the named insured which is "furnished for the use of any person or organization."

Coverage Part 500 is the applicable coverage in this case because the Dodge Aries K was furnished to Wichelt by the plaintiff's insured, who owned the vehicle. However, plaintiff is only obligated to pay sums for which the insured is liable. With

respect to auto hazard, the coverage designates as an insured "[a]ny other person or organization *required by law* to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission." (Emphasis supplied.)

## MUST WICHELT BE AN INSURED
## UNDER STATE LAW?

The relevant statute in this case is the Motor Vehicle Safety Responsibility Act, as set out in Neb. Rev. Stat. § 60-501 et seq. (Reissue 1988). Section 60-534 requires an insurance policy to insure the person named in the policy as well as any person who drives the insured vehicle with the permission of the named insured. Section 60-561 states in relevant part that "nor shall sections 60-516 to 60-544 apply to any automobile liability policy which has not been certified as provided in sections 60-528 to 60-531 as proof of financial responsibility." This court must determine whether plaintiff was required to insure Wichelt under § 60-534 or whether it was exempt from such a requirement pursuant to § 60-561.

## CERTIFICATION

This court in *State Farm Mut. Auto Ins. v. Pierce*, 182 Neb. 805, 157 N.W.2d 399 (1969), stated that Nebraska had no general omnibus clause and that the act had been amended to apply only to automobile liability policies which had been certified as provided by §§ 60-528 to 60-531. See, also, *Allied Mut. Ins. Co. v. Musil*, 242 Neb. 64, 493 N.W.2d 171 (1992). The question arises as to which automobile policies must be certified and what constitutes certification.

## WHEN IS CERTIFICATION NECESSARY?

Sections 60-507 and 60-508 address the security that must be provided by an operator of a vehicle involved in an accident. When a person is involved in an accident which results in bodily injury or property damage in excess of $500, § 60-507 permits the Department of Motor Vehicles to suspend the person's driving privilege unless that person provides security to satisfy any judgment against him. Section 60-508 forgoes the

depositing of security if, in one instance, the owner or operator provides proof that he has an automobile liability policy in effect.

The second situation where proof of financial responsibility is required under the act involves a person whose license has been revoked or suspended for failure to pay a judgment against him. See §§ 60-516 to 60-527. In order to reinstate the operator's license or an owner's registration for failure to pay the judgment, the person must stay, satisfy, or discharge the judgment and show proof of financial responsibility. § 60-519. A person may demonstrate proof of financial responsibility under § 60-528 in several ways. One method is to file a certificate of insurance which certifies that there is a "motor vehicle liability policy," not an "automobile liability policy" as required by § 60-508, for the benefit of the person required to show proof of financial responsibility.

Section 60-533 specifically defines a motor vehicle liability policy as one certified as provided in §§ 60-529 to 60-531. Pursuant to § 60-534, this motor vehicle liability policy must insure the person named therein "and any other person, *as insured*, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured . . . ." (Emphasis supplied.) This provision is known as the omnibus clause.

Section 60-561 states that §§ 60-516 to 60-544 shall not apply to "any automobile policy which has not been certified as provided in sections 60-528 to 60-531 as proof of financial responsibility." Thus, the omnibus clause of § 60-534 applies only to owners and operators of motor vehicles who must certify their motor vehicle liability policy in order to reinstate their operator's license or registration which has been suspended or revoked for failure to pay a judgment.

In this case, no evidence has been presented that Auto Mart was required to, nor that it did, certify its automobile policy under §§ 60-528 through 60-531. Therefore, Wichelt was not covered as an insured under the auto hazard provision of plaintiff's policy, because plaintiff was not required by law to be an insured.

## PROOF OF INSURANCE REQUIRED
## TO REGISTER LOANER CAR?

Defendant claims that plaintiff was nevertheless required to insure Wichelt, because under Neb. Rev. Stat. § 60-302 (Reissue 1988), "[a]ll applications for registration of motor vehicles shall be accompanied by proof of financial responsibility . . . or by a certificate or policy of insurance." However, according to the stipulated facts, although Auto Mart held the certificate of title on the Dodge Aries K, the vehicle was not registered separately by Auto Mart, but was operated under dealer plates. Neb. Rev. Stat. § 60-320 (Reissue 1988) provides in part:

(1) Each licensed dealer in motor vehicles . . . doing business in this state in lieu of the registering of each motor vehicle or trailer which such dealer owns of a type otherwise required to be registered . . . may (a) operate or move the same upon the streets and highways of this state solely for purposes of transporting, testing, demonstrating, or use in the ordinary course and conduct of his or her business as a motor vehicle or trailer dealer . . . .

(2) . . . Motor vehicles or trailers owned and held for sale by such dealer and bearing such dealer number plates may be driven upon the streets and highways for a period of forty-eight hours as service loaner vehicles by customers having their vehicles repaired by the dealer.

Auto Mart was exempt from registering the Dodge Aries K under § 60-320 because it was a licensed dealer. As such, plaintiff was not required to present an insurance policy as proof of financial responsibility and not required by law to insure Wichelt.

## CONCLUSION

Since Wichelt was not an insured as provided by either of the applicable coverages, the trial court was incorrect in finding that she was an insured under plaintiff's policy and in holding that plaintiff could not maintain a subrogation action against defendant and Wichelt. Both parties have clauses within their policies that state they are in excess over any other insurance.

202

However, because Wichelt was not an insured under plaintiff's policy, the coverage provided by her own insurance carrier, defendant, was primary to plaintiff's insurance policy covering Auto Mart.

REVERSED AND REMANDED.