PEARL STUTHMAN, APPELLANT, V. ADELAIDE D. HULL TRUST ET
AL., APPELLEES.

447 N.W.2d 23

Filed October 20, 1989.    No. 88-004.

Lynn D. Hutton, Jr., and Jan L. Remmich, of Hutton and
Freese, for appellant.

John M. Thor for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN,
GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This is an appeal from an order of the Cuming County
District Court dismissing plaintiff's petition for equitable relief.
We affirm.

On December 1, 1986, plaintiff filed a petition alleging that the defendants constructed a ditch which drained accumulated surface water from a depression or basin area located on defendants' land, across the defendants' land, and ultimately onto plaintiff's land. This drainage water caused the plaintiff's land to become soggy, preventing 11 acres of corn from being harvested by the tenant in 1986. The plaintiff sought a permanent injunction ordering defendants, in effect, to return defendants' land to its condition prior to the ditch's construction. The petition also requested $660 in money damages for rental loss for 1986.

The trial judge reviewed the evidence, which was received by stipulation, and made specific findings, including findings that the defendants brought themselves within the protection of Neb. Rev. Stat. § 31-201 (Reissue 1988) and that the plaintiff did not allege or prove negligence or lack of reasonable care on the part of the defendants. Consequently, he ordered that plaintiff's petition be dismissed at plaintiff's costs. From this order, the plaintiff appeals to this court.

On appeal, plaintiff alleges 11 assignments of error, all of which concern alleged erroneous factual findings. All assigned errors will be considered in our de novo review.

An action for an injunction sounds in equity. *Selection Research, Inc. v. Murman*, 230 Neb. 786, 433 N.W.2d 526 (1989). In an appeal of an equity action, this court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court; provided, where the credible evidence is in conflict on a material issue of fact, we consider and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. In its de novo review of the record, this court is guided by the rule that a party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle the claimant to relief. *Federal Land Bank of Omaha v. Swanson*, 231 Neb. 868, 438 N.W.2d 765 (1989).

We have reviewed the record de novo and make the following findings of material fact. The plaintiff, Pearl Stuthman, owns a parcel of farmland described as the west half of the

southwest quarter of Section 23, Township 23 North, Range 4 East of the 6th P.M., less approximately 4.6 acres owned by Melvin Brokaw, all in Cuming County, Nebraska. Since 1971, this land has been rented to Vernon Schultz, who has farmed the property.

The defendant Adelaide D. Hull Trust owns a parcel of farmland legally described as the southeast quarter of Section 22, Township 23 North, Range 4 East of the 6th P.M., in Cuming County, Nebraska. Since 1981, this land has been rented to Willis and Weslie Geu, who have farmed the property. Henry E. Hull, who is also a defendant, is the trustee.

The trust property lies immediately west of the Stuthman property, and the two properties are separated by a county road which runs to the north and south. A drainage culvert, which was installed by someone other than the defendants, lies under the surface of this road. The natural slope of the surrounding land deposits water into the road ditch on the west side of the road, and the water flows through the culvert from the west to the east onto the Stuthman land.

To the south and east of the Stuthman property lies the Anderson property. The Anderson and Stuthman properties are separated by a county road which runs to the east and west. A drainage culvert lies under the surface of this road and drains water from the north to the south and southeast into a creek which eventually flows into the Elkhorn River.

There is a natural basin or depression area located in the northwestern area of the trust property. Land surrounding the depression to the north, west, and south is higher in elevation than the depression. The east rim of the depression has a ridge about 2 feet higher than the lowest point of the depression. Surface waters accumulate in the depression during periods of above-normal moisture from either rainfall, irrigation runoff, or melting snows. Water which does not flow over the top of the eastern rim or ridge remains in the depression until it evaporates or percolates down through the soil. Water retention in the depression is only temporary, and the depression does not constitute a permanent lake or pond. This depression has periodically and temporarily accumulated surface water.

In July of 1986, Henry Hull, as trustee, directed that a

drainage ditch be dug to facilitate drainage by preventing the accumulation of surface water in the depression. The general direction of the flow of surface waters on the trust property is from the west to the east and southeast. The ditch was constructed through the ridge on the east side of the basin. The ditch terminates on the trust property, and the water flowing from this ditch empties into a natural drainage course or draw also located on the trust property. After the water leaves the trust property, it flows into the county road ditch, through the culvert, and across the Stuthman land, following the natural course of drainage in an east to southeast direction. After following this natural drainage course across the Stuthman property, the water flows through the drainage culvert under the east-west county road into a creek on the Anderson property, eventually draining into the Elkhorn River.

At the time the ditch was dug, the depression contained no water, and there was no sudden release of impounded waters. By constructing the ditch, the defendants have not diverted any water upon the lands of any others except into a natural draw or drainageway where the water would generally flow.

The wet areas on the Stuthman land would have been present even without the construction of the drainage ditch. Charles Mahnke, a soil scientist and soil specialist for the Soil Conservation Service for 29 years, testified for the defendants that there has been increased irrigation and precipitation runoff in the area since the early 1980s. The soil in the area of both properties is sandy. Sandy soil, because of its porous character, allows water to travel downward until it reaches "hardpan." When the water reaches the hardpan, it begins to migrate toward the general course of drainage, which is usually toward lower elevations, where it congregates or accumulates. Eventually, water will begin to appear on the surface of the land when the accumulations come to a point where the elevations have leveled out in the course of drainage. He testified that even without the construction of the ditch, both properties would have had wet areas in 1986 and 1987 and possibly into later years. This is because the wet areas on both properties are migrating to the east, following the natural course of drainage. Thus, even without the drainage ditch, wet areas or

accumulations of surface water would be migrating under the surface of the soil from the trust property onto the Stuthman property, which lies in the natural course of drainage. The Stuthman property is in no worse condition than it would be but for the construction of the ditch.

Moreover, it is likely the construction of the ditch will benefit the Stuthman property. Mahnke testified that the construction of the ditch will help reduce the wet areas that will exist on both the Stuthman and trust properties, because construction of the ditch allows runoff waters to travel at greater velocities across the surface of the ground, rather than allowing the water to percolate and then migrate under the surface of the ground. Although initially there may be some added water on the surface, in the long run the wet areas should dry faster because there will not be the slower percolation and migration of water through the porous soil to the lower elevations in the natural course of drainage. In sum, the construction of the ditch should actually benefit the Stuthman property because it allows runoff water to be removed from both properties in a shorter time period.

In light of the foregoing factual findings of this court, we hold that the trial judge properly dismissed the plaintiff's petition. Section 31-201 provides:

> Owners of land may drain the same in the general course of natural drainage by constructing an open ditch or tile drain, discharging the water therefrom into any natural watercourse or into any natural depression or draw, whereby such water may be carried into some natural watercourse; and when such drain or ditch is wholly on the owner's land, he shall not be liable in damages therefor to any person or corporation.

This court has also stated:

> An owner of land has the right in the interest of good husbandry to drain ponds or basins thereon of a temporary character, and which have no natural outlet or course of flow, by discharging the waters thereof by means of an artificial channel into a natural surface-water drain on his own property, and through such drain over the land of another proprietor in the general course of

drainage in that locality, even though the flow in such natural drain is thereby increased over the lower estate, and provided that this is done in a reasonable and careful manner and without negligence.

(Syllabus of the court.) *Aldritt v. Fleischauer*, 74 Neb. 66, 103 N.W. 1084 (1905). See, also, *Pospisil v. Jessen*, 153 Neb. 346, 44 N.W.2d 600 (1950).

In *Todd v. York County*, 72 Neb. 207, 220-21, 100 N.W. 299, 305 (1904), we said:

An owner has the undoubted right to protect his land from mere surface water and, in the interest of good husbandry, to drain lagoons or basins thereon of a temporary character, by discharging such surface waters by means of artificial channels into a natural surface water drain and through such drain or channel on and over the land of another, provided such person acts in a reasonable and careful manner and without negligence, and the injury, if any, resulting therefrom to such lower proprietor by reason of the increased flowage in the natural surface water drain will be accounted *damnum absque injuria*. For negligence in the manner of accomplishing the improvement, such owner is responsible and accountable to those injured by his negligent acts.

Applying these principles to the facts of this case, it is clear that the defendants fall within the protection of § 31-201 and this court's precedent. The depression or basin does not constitute a permanent lake or pond. It constitutes, at best, a temporary pond. The defendants rightfully constructed an open ditch which drained surface water from the depression into a natural draw or surface water drain located on the trust property. Through this draw, the water traveled onto and across the Stuthman land. Eventually, the drainage water, still following the natural course of drainage, would drain into a watercourse on the Anderson property. At no time after leaving the depression did the water travel on any land other than land in the natural and general course of drainage. Further, because the ditch was constructed entirely on the trust land, the trust is not liable for damages. The actions of the defendants are protected by § 31-201 and precedent from this court.

The protection afforded a defendant by § 31-201 is not absolute. A defendant can still be held responsible if plaintiff alleges and proves defendant acted negligently or without reasonable care. See, *Todd v. York County, supra*; *Aldritt v. Fleischauer, supra*; *Pospisil v. Jessen, supra*; *Halligan v. Elander*, 147 Neb. 709, 25 N.W.2d 13 (1946). Here, Stuthman made no attempt to show negligence or lack of reasonable care.

The order of the district court dismissing plaintiff's petition is affirmed.

AFFIRMED.