STATE OF NEBRASKA EX REL. ROBERT M. SPIRE, ATTORNEY GENERAL, AND RONALD L. STASKIEWICZ, COUNTY ATTORNEY OF DOUGLAS COUNTY, NEBRASKA, APPELLEES, V. STRAWBERRIES, INC., A NEBRASKA CORPORATION, ET AL., APPELLANTS.

473 N.W.2d 428

Filed August 30, 1991.   No. 89-017.

Michael J. Lehan, of Kelley, Kelley & Lehan, P.C., for appellants.

Robert M. Spire, Attorney General, and William L. Howland; and Ronald L. Staskiewicz, Douglas County Attorney, and Michael W. Amdor for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

Strawberries, Inc., and 18 other Douglas County taverns or individuals doing business as taverns appeal a district court judgment (1) permanently enjoining them from possessing or allowing the playing of video gambling devices on their premises and (2) finding Neb. Rev. Stat. § 28-1107(2) (Reissue 1989) unconstitutional.

We hold that § 28-1107(2) violates Neb. Const. art. III, § 24, which prohibits the Legislature from authorizing games of chance, and that the defendants' actions constitute possession of gambling devices under § 28-1107(1). The trial court judgment is affirmed.

## STANDARD OF REVIEW

An action for injunction sounds in equity. *Stuthman v. Adelaide D. Hull Trust*, 233 Neb. 586, 447 N.W.2d 23 (1989). A declaratory judgment action is an appropriate method to obtain a judicial construction of a statute or determination of a statute's validity, including resolution of a challenge to the constitutionality of the statute. *State ex rel. Spire v. Northwestern Bell Tel. Co.*, 233 Neb. 262, 445 N.W.2d 284

(1989). In appellate review of an action for declaratory judgment in an equity action, the standard of review for an equity case applies. *Id.* In an appeal of an equity action, this court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court; provided, where the credible evidence is in conflict on a material issue of fact, we consider and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Stuthman, supra.* One claiming that a statute is unconstitutional has the burden to show that the questioned statute is unconstitutional. *In re Application A-16642*, 236 Neb. 671, 463 N.W.2d 591 (1990). A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality. *Id.*

## FACTUAL BACKGROUND

The record reveals that in late 1987, officers of the Nebraska State Patrol, the Omaha Police Division, and the Federal Bureau of Investigation (FBI) visited a group of taverns in Douglas County, looking for video gambling devices as part of an investigation launched by the State Attorney General. In each establishment where officers found video gambling devices, they proceeded to play the machines. The testimony of the officers established that most of the games operated in a similar manner. For each 25 cents deposited in a machine, the player would receive credit for one game and could play up to 10 credits at a time. Most of the games displayed a five-card poker hand dealt by a computer mechanism and displayed on a video screen. The player, if dissatisfied with the hand initially dealt, could discard those cards and draw and play additional cards. The player had no control over the cards initially dealt or received after discard. If the poker hand finally held by the player was the equivalent of or better than certain poker hands shown on the face of the game, the player would win one or more credits. The player would receive one additional play for each credit. Other games available on the machines included dice and blackjack. According to testimony of the officers and of an FBI agent, some of the machines in question contained

"knock-off" switches. The FBI agent stated that machines with such switches also contain accounting functions which allow the proprietors to pay off customers who have accumulated credits on the machines, knock off the credits from the machines, and then account for any moneys paid out.

Based upon the investigation, the State filed a petition against 25 business establishments and individuals with liquor licenses in Douglas County, alleging they possessed video gambling devices. The petition claimed that the defendants' actions violated Neb. Const. art. III, § 24, and § 28-1107, and sought as relief a permanent injunction against such actions and a declaration that § 28-1107(2) was unconstitutional. On March 14 and 15, 1988, proceedings were had in the district court for Douglas County, wherein the State sought and received a temporary injunction.

Subsequently, trial proceeded against the defendants on the State's request for a permanent injunction. Six defendants, 1830 Inc., a Nebraska corporation; American Legion Post No. 331; Veterans of Foreign Wars Post No. 8334; James L. Wickstrom, an individual; H.M.C., Inc., a Nebraska corporation; and D. Louis Black, Inc., a Nebraska corporation, consented to the entry of an injunction prohibiting them from possessing and maintaining gambling devices on their premises. On November 1, 1988, the district court found that the possession of video gambling devices constituted a nuisance under § 28-1107(1) and Neb. Const. art. III, § 24, and, further, that § 28-1107(2) was unconstitutional and severable from § 28-1107(1). The district court permanently enjoined the remaining 19 defendants from playing, possessing, returning to, or locating on the premises any video gaming devices. A motion for new trial was overruled, and the 19 defendants timely appealed.

## ASSIGNMENTS OF ERROR

The appealing defendants claim that the trial court erred (1) in determining that § 28-1107(2) violated Neb. Const. art. III, § 24, (2) in determining that § 28-1107(1) was severable from § 28-1107(2), (3) in determining that the conduct of the defendants constituted a nuisance under Nebraska

constitutional or statutory law, (4) in entering an injunction, (5) in not determining that Neb. Rev. Stat. §§ 28-1101 et seq. (Reissue 1989) did not violate provisions of the state and federal Constitutions, and (6) in not granting defendants' motion for new trial.

## CONSTITUTIONALITY OF § 28-1107(2)

As stated, the trial court determined that § 28-1107(2) violated Neb. Const. art. III, § 24. That constitutional provision provides in pertinent part:

> The Legislature shall not authorize any game of chance, nor any lottery, or gift enterprise when the consideration for a chance to participate involves the payment of money for the purchase of property, services, or a chance or admission ticket or requires an expenditure of substantial effort or time . . . .

This constitutional provision has remained relatively unchanged since 1875. Correspondingly, the statute relating to the "possession of gambling devices" enacted pursuant to this constitutional provision also remained relatively unchanged for 100 years.

Starting in 1973, the Legislature began carving specific exceptions into the statute. A new subsection was added which exempted certain coin-operated machines from operation of the statute. See 1973 Neb. Laws, L.B. 360, and Neb. Rev. Stat. § 28-945(2) (Reissue 1975).

In 1977, Neb. Rev. Stat. ch. 28 (1943) as amended was repealed. The new section relating to the possession of gambling devices provided:

> A person commits the offense of possession of a gambling device if he manufactures, sells, transports, places, possesses, or conducts or negotiates any transaction affecting or designed to affect ownership, custody, or use of any gambling device, knowing that it shall be used in the advancement of unlawful gambling activity.

§ 28-1107(1) (Supp. 1977). The statute did not initially encompass the exception first created in § 28-945(2). However, this exception was soon added as § 28-1107(2) in 1978 by L.B. 900. In 1979, L.B. 152 made the statute gender neutral and

changed the classification of the crime from a Class I to a Class II misdemeanor.

Finally, in 1987, the Legislature revised subsection (2) of the statute to encompass modern games and eliminate an earlier replay limit:

> This section shall not apply to any coin-operated mechanical gaming device, computer gaming device, electronic gaming device, or video gaming device which has the capability of awarding free games, which is intended to be played and is in fact played for amusement only, and which may allow the player the right to replay such gaming device at no additional cost, which right to replay shall not be considered money or property, except that such mechanical game (a) can be discharged of accumulated free replays only by reactivating the game for one additional play for each accumulated free replay and (b) makes no permanent record directly or indirectly of free replays so awarded. . . .

§ 28-1107(2) (Reissue 1989).

Neb. Const. art. III, § 24, is in clear and unambiguous language and can be divided into three elements: (1) chance: "[t]he Legislature shall not authorize any game of chance"; (2) consideration: "when the consideration for a chance to participate involves the payment of money"; and (3) prize: "for the purchase of property [or] services."

In defining these elements, this court has held that a game of chance is one in which the result as to success or failure depends less on the skill and experience of the player than on purely fortuitous or accidental circumstances incidental to the game or the manner of playing it or on the device or apparatus with which it is played. *Indoor Recreation Enterprises, Inc. v. Douglas*, 194 Neb. 715, 235 N.W.2d 398 (1975). See, also, *CONtact, Inc. v. State*, 212 Neb. 584, 324 N.W.2d 804 (1982) (a game of chance is one in which the winner is determined by mere luck and not by skill; the predominant nature of the game, i.e., skill or chance, determines its classification). Free replays are things of value and when obtained on a gambling device constitute property within the meaning of Neb. Const. art. III, § 24. *Baedaro v. Caldwell*, 156 Neb. 489, 56 N.W.2d 706 (1953).

Section 28-1107(2) attempts to exempt devices which would normally fall under the "games of chance" prohibition by redefining them. Subsection (2) provides that subsection (1) shall not apply to games used for amusement only and also attempts to exclude free replays from being considered as property under the "prize" element. Neb. Const. art. III, § 24, is clear. This court has already ruled that free replays on a device otherwise considered a gambling device constitute property within the meaning of the prohibition.

The Legislature cannot avoid constitutional provisions by statutorily redefining constitutionally unacceptable activity. The Legislature's power of definition may not be employed to nullify or circumvent the provisions of the Nebraska Constitution. *MAPCO Ammonia Pipeline v. State Bd. of Equal.*, 238 Neb. 565, 471 N.W.2d 734 (1991). To redefine the activity that the Legislature seeks to permit would require an amendment to this state's Constitution. Absent such an amendment, § 28-1107(2) is unconstitutional for being in contravention of the express provision of Neb. Const. art. III, § 24.

## SEVERABILITY OF § 28-1107(1)

We next determine whether § 28-1107(1) is severable from § 28-1107(2). The test to be applied in determining whether an unconstitutional clause may be severed from the remainder of a statute is (1) whether, absent the invalid portions, a workable plan remains; (2) whether the valid portions of an act can be enforced independently, and where the invalid portions do not constitute such an inducement to the valid parts that the valid parts would not have passed without the invalid parts; (3) whether the severance will do violence to the intent of the Legislature; and (4) whether a declaration of separability is included in the act, indicating that the Legislature would have enacted the bill absent the invalid portion. *Ewing v. Scotts Bluff Cty. Bd. of Equal.*, 227 Neb. 798, 420 N.W.2d 685 (1988). The first three elements of this test are clearly met because subsection (2) was first added to § 28-1107 as a 1978 amendment. Section 28-1107(1) was enacted independently in 1977. The fact that § 28-1107(2) was not enacted with a

severability clause is not fatal to a conclusion that this subsection is severable from the remainder of the statute. A severability clause in a statute is not a condition precedent to a determination of the question of severability. *Ewing, supra.* Enacting § 28-1107(1) independently of subsection (2) clearly evidences the Legislature's intent to enact the bill absent the invalid portion. Section 28-1107(2) may properly be severed from the remainder of the statute.

## CONDUCT OF THE DEFENDANTS AS A NUISANCE

In their third assignment of error, the defendants claim that the trial court erred in determining that their conduct constituted a public nuisance under Nebraska constitutional or statutory law. "A public nuisance is an unreasonable interference with a right common to the general public." Restatement (Second) of Torts § 821B at 87 (1979). Circumstances that may sustain a holding that such interference is unreasonable include whether the conduct is proscribed by statute. *Id.*; Prosser and Keaton on the Law of Torts, *Nuisance* § 90 at 643-44 (5th ed. 1984) (public nuisance "comprehends a miscellaneous and diversified group of minor criminal offenses, based on some interference with the interests of the community [and] includes interferences with . . . public morals").

This court has consistently held that establishments performing gambling-related offenses can constitute public nuisances. See, *City of Omaha v. Danner*, 186 Neb. 701, 185 N.W.2d 869 (1971) (establishment was public nuisance because of various activities, including gambling); *State ex rel. Carlson v. Hatfield*, 183 Neb. 157, 158 N.W.2d 612 (1968) (establishment was a gathering place for gamblers); *State ex rel. Johnson v. Hash*, 144 Neb. 495, 13 N.W.2d 716 (1944) (places where gambling is publicly and continuously permitted are public nuisances); *State, ex rel. Hunter, v. The Araho*, 137 Neb. 389, 289 N.W. 545 (1940) (a place kept for gambling purposes is a public nuisance); *Hill v. Pierson*, 45 Neb. 503, 63 N.W. 835 (1895) (a gambling house is a public nuisance).

The defendants contend that no criminal offenses were committed because their conduct did not violate § 28-1107(1).

Repeated again, that section provides:

> A person commits the offense of possession of a gambling device if he or she manufactures, sells, transports, places, possesses, or conducts or negotiates any transaction affecting or designed to affect ownership, custody, or use of any gambling device, knowing that it shall be used in the advancement of unlawful gambling activity.

The elements relative to the defendants, and those which the State must prove exist by a preponderance of the evidence, see *Uhing v. City of Oakland*, 236 Neb. 58, 459 N.W.2d 187 (1990), are that the defendants (1) possessed a gambling device (2) knowing it would be used in the advancement of unlawful gambling activity. In regard to the first element, the defendants do not dispute that they possessed the devices in question, but, rather, they claim that the machines in question are not gambling devices.

As relevant to the machines seized in this action, "gambling device" is defined as

> any device, machine, paraphernalia, writing, paper, instrument, article, or equipment that is used or usable for engaging in gambling, whether that activity consists of gambling between persons or gambling by a person involving the playing of a machine. Gambling device shall also include any mechanical gaming device, computer gaming device, electronic gaming device, or video gaming device which has the capability of awarding something of value . . . .

§ 28-1101(5). This definition necessarily requires further deference to the definition of "gambling," which is defined in pertinent part as when "[a] person . . . bets something of value upon the outcome of a future event, which outcome is determined by an element of chance . . . ." § 28-1101(4).

Defendants argue that players of these devices do not bet something of value on the future outcome of an event, but, rather, a player "merely buys the right to possess the machine according to certain terms, one of which is the possibility of longer play depending upon the outcome of the machine's operation." Brief for appellants at 26. A similar argument was rejected in *State v. Two IGT Video Poker Games*, 237 Neb. 145,

152, 465 N.W.2d 453, 459 (1991), wherein this court stated:

> The 25 cents used to activate the machines is clearly something of value. The free replay credits awarded by the machines are a credit or promise involving extension of a service or entertainment and are something of value. [Citations omitted.] The player of the game is betting his or her 25 cents (or accumulated replay credits) on the outcome of the play, while the machine is betting an extension of entertainment. Both parties are therefore betting something of value on the outcome, which is determined by an element of chance.

None of the remaining exceptions to § 28-1101(4) are relevant here. Absent an exception, the seized devices are "gambling devices" within the meaning of the statute.

The final element of § 28-1107(1) is whether the defendants "knew" the devices were being used in the advancement of unlawful gambling activity. The existence of a required intent, knowledge, or other state of mind may be established through circumstantial evidence. *Two IGT Video Poker Games, supra*; *State v. Ayres*, 236 Neb. 824, 464 N.W.2d 316 (1991). As stated in *Two IGT Video Poker Games*, playing these machines qualifies as engaging in gambling activity. The fact that the devices were seen in bars being played by patrons evidences a knowledge that the defendants knew that these machines, having no other purpose except as "gambling devices," were used in gambling activity. The evidence was sufficient to prove that the defendants violated § 28-1107(1).

### INJUNCTION AS PROPER REMEDY

An injunction will not lie unless the right is clear, the damage is irreparable, and the remedy at law is inadequate. *Young v. Lacy*, 221 Neb. 511, 378 N.W.2d 192 (1985). Based on the foregoing analysis there is no question that the State's right to an injunction is clear. The defendants dispute whether there was irreparable damage or no adequate remedy at law.

Injunction is a proper remedy to be used by the State in the protection of public rights, property, or welfare, whether or not the acts complained of violate a criminal statute or constitute a nuisance. *State ex rel. Meyer v. Weiner*, 190 Neb. 30, 205

N.W.2d 649 (1973). Violations of these public rights can constitute irreparable damage.

Where evidence establishes that an injury will be either continuous or repetitive, granting of an injunction is an appropriate remedy. *Delp v. Laier*, 205 Neb. 417, 288 N.W.2d 265 (1980). A court of equity may properly afford injunctive relief where there has been a continuing and flagrant course of violations of the law, even though these acts may be subject to criminal prosecution. *State ex rel. Douglas v. Wiener*, 220 Neb. 502, 370 N.W.2d 720 (1985). There is no question that the conduct in question is pervasive. The record reveals that approximately 80 percent of all establishments licensed to sell liquor in Douglas County have similar machines. Such pervasiveness can constitute a continuing and flagrant course of violations. The violations need not be from a single establishment. Repeated criminal prosecutions would not provide an adequate remedy to eradicate the nuisance.

Finally, a court of equity has jurisdiction to enjoin a threatened injury whenever its nature is such that it could not be adequately compensated in damages and its continuance would occasion a constantly recurring grievance. *City of Syracuse v. Farmers Elevator, Inc.*, 182 Neb. 783, 157 N.W.2d 394 (1968). This precisely reflects the conduct in question.

## CONSTITUTIONAL VIOLATIONS

The defendants claim that the trial court erred in not determining that §§ 28-1101 et seq., the Nebraska statutory sections relating to gambling, did not violate provisions of the state and federal Constitutions. Specifically, the defendants contend (1) that their liberty interests protected by Neb. Const. art. I, §§ 1 and 26, and U.S. Const. amends. V and XIV have been impaired by Nebraska's gambling statutes and (2) that the term "used or usable" in § 28-1101(5), which defines "gambling device," is overbroad in violation of Neb. Const. art. I, §§ 1 and 3, and U.S. Const. amends. V and XIV.

The defendants concede that

> [t]he [U.S.] constitution does not recognize an absolute and uncontrollable liberty and society is free to enact laws against the evils which menace the health, safety, morals

and welfare of people. See, *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, [57 S. Ct. 578, 81 L. Ed. 703] (1937). However, "liberty" protected by the due process clause of the Fourteenth Amendment may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the state to effect. See, *Meyer v. Nebraska*, [262 U.S. 390, 43 S. Ct. 625, 67 L. Ed. 1042 (1923)].

Brief for appellants at 34. See, also, *Idaho Health Care Ass'n v. Sullivan*, 716 F. Supp. 464 (D. Idaho 1989); *Kaltenbach v. Breaux*, 690 F. Supp. 1551 (W.D. La. 1988).

This argument was answered in *State v. Two IGT Video Poker Games*, 237 Neb. 145, 150, 465 N.W.2d 453, 458 (1991), wherein this court stated: "Prohibiting gambling is a legitimate government purpose under the police power. [Citations omitted.] Prohibiting the possession or use of gambling devices is rationally related to preventing gambling . . . . Therefore, the statutes in question are a valid exercise of the State's police power."

Again, under Nebraska law, a "gambling device" is defined as

any device, machine, paraphernalia, writing, paper, instrument, article, or equipment that is *used or usable for engaging in gambling*, whether that activity consists of gambling between persons or gambling by a person involving the playing of a machine. Gambling device shall also include any mechanical gaming device, computer gaming device, electronic gaming device, or video gaming device which has the capability of awarding something of value . . . .

§ 28-1101(5). The defendants take issue that the term "used or usable for engaging in gambling" is overbroad both facially and as applied to these defendants and is thus violative of Neb. Const. art. I, §§ 1 and 3, and U.S. Const. amends. V and XIV.

A statute may be unconstitutional by being overbroad in the sense that it prohibits the exercise of constitutionally protected conduct. See *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987). In essence, the defendants contend that almost any item

is *usable* for gambling under the statute's definition of a "gambling device."

This court need not go into great detail to resolve this issue because the defendants both ask and answer their own question. The defendants state that "[b]y reading the 'bet' requirement of §28-1101(4) into §28-1101(5), the overbreadth problem is solved." Brief for appellants at 41. This is precisely how the statute does not infringe on protected conduct. Since this court has ruled that a "bet" was or could be involved in the use of these machines, the machines in question properly fit within the definition of "gambling devices."

### MOTION FOR NEW TRIAL

Although the defendants have assigned as error the trial court's refusal to sustain their motion for new trial, they fail to discuss that issue in their brief. Errors assigned but not discussed will not be considered by the Supreme Court. *State v. Thomas*, 238 Neb. 4, 468 N.W.2d 607 (1991); *Brown v. Farmers Mut. Ins. Co.*, 237 Neb. 855, 468 N.W.2d 105 (1991).

### CONCLUSION

The errors assigned by the defendants are without merit or have not been discussed. This court will not consider assignments of error which are not discussed in the proponent's brief. *State v. Bonczynski*, 227 Neb. 203, 416 N.W.2d 508 (1987). The trial court judgment is affirmed.

AFFIRMED.