United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 97-1546

_____

United States of America,      *
     *
         Appellant,      *
     *    Appeal from the United States
       v.      *    District Court for the
     *    District of Nebraska.
Santee Sioux Tribe of Nebraska, a      *
Federally Recognized Indian Tribe,      *
     *
         Appellee.      *

_____

Submitted: November 19, 1997
Filed: January 29, 1998

_____

Before BOWMAN, BRIGHT, and MURPHY, Circuit Judges.

_____

BOWMAN, Circuit Judge.

The United States appeals the judgment of the District Court denying the government's request for an injunction and refusing to enforce the temporary closure order of the Chairman of the National Indian Gaming Commission ("NIGC" or "Commission") to prevent the Santee Sioux Tribe of Nebraska ("the Tribe") from operating a gambling casino on the Tribe's reservation. We reverse.

# I.

In 1988, Congress enacted the Indian Gaming Regulatory Act ("IGRA"), Pub. L. No. 100-497, 102 Stat. 2467 (1988) (codified as amended at 25 U.S.C. §§ 2701-2721 (1994); 18 U.S.C. §§ 1166-1168 (1994)), which authorizes class III gaming activities on Indian lands[1] provided that such activities are permitted under a tribal "ordinance or resolution," "located in a State that permits such gaming for any purpose by any person, organization, or entity," and "conducted in conformance with a Tribal-State compact." 25 U.S.C. § 2710(d)(1).

In March 1993, the Tribe approached the State of Nebraska to engage in tribal-state compact negotiations necessary under the IGRA to conduct class III gaming on the Tribe's lands. After failing to reach an agreement with the State despite extended negotiations, the Tribe opened a class III gaming facility on tribal lands in February 1996. This casino offered tribal members and the general public the opportunity to play video slot machines, video poker machines, and video blackjack machines. In the same month, the Tribe filed suit against the State of Nebraska and its Governor in district court alleging failure to negotiate in good faith for a tribal-state compact. See id. § 2710(d)(3) (negotiation of compact), (7) (jurisdiction of federal courts). The State asserted that the Tribe's lawsuit was barred by the Eleventh Amendment and counterclaimed, alleging that the Tribe was conducting class III gaming in violation of

---

[1]At all times relevant to this litigation, the IGRA defined class I gaming as "social games . . . for prizes of minimal value or traditional forms of . . . gaming" in connection with tribal ceremonies, 25 U.S.C. § 2703(6); see also 25 C.F.R. § 502.2 (1997), class II gaming as "the game of chance commonly known as bingo . . . including . . . pull-tabs, lotto, punch boards, tip jars, instant bingo, and other games similar to bingo" and certain card games, 25 U.S.C. § 2703(7)(A); see also 25 C.F.R. § 502.3 (1997), and class III gaming as "all forms of gaming that are not class I gaming or class II gaming," 25 U.S.C. § 2703(8) (including "slot machines . . . and electromechanical facsimiles of any game of chance"); 25 C.F.R. § 502.4 (1997).

the IGRA.  The State requested declaratory and injunctive relief as well as a temporary restraining order to enjoin the Tribe's gaming activities.  The District Court denied the State's motion for a temporary restraining order, holding that the State could not use a civil injunction to enjoin purportedly illegal activity, and that the State had failed to establish that the Tribe's gaming activity constituted a public nuisance suitable for injunctive relief.

On March 27, 1996, the United States Supreme Court decided Seminole Tribe v. Florida, 517 U.S. 44 (1996), wherein the Court held that Congress lacked the authority to enact the remedial sections of  the IGRA allowing an Indian tribe to sue a state, and that these sections comprised an unconstitutional abrogation of the states' sovereign immunity.  In light of this decision, the District Court dismissed the Tribe's suit against the state of Nebraska and denied the Tribe's motion for a new trial.[2]

On April 25, 1996, the Chairman of the NIGC entered a notice of violation, see 25 C.F.R. § 573.3 (1996), and an order of temporary closure, see 25 U.S.C. §§ 2705(a)(1), 2713(b); 25 C.F.R. § 573.6(11) (1996), informing the Tribe that, in the absence of a tribal-state compact, its class III gaming activities were being conducted in violation of  the IGRA, and demanding that the Tribe close its gaming facility on or before May 3, 1996.  The Tribe requested and was granted expedited review before the Chairman, who declined to amend his original conclusions regarding the violations but issued a revised order extending the date for closure to May 5, 1996.  The Tribe closed its gaming facility on May 5, 1996, in compliance with this order, but filed an appeal of the Chairman's order with the full Commission and with the District Court.  In the District Court, the Tribe prayed for an order declaring that the tribal-state compacting provisions of the IGRA were unconstitutional and that the State permits class III

---

[2]On appeal, we affirmed the District Court's dismissal of the Tribe's action against the State.  See Santee Sioux Tribe v. Nebraska, 121 F.3d 427, 432 (8th Cir. 1997).

gaming; and for an order enjoining the NIGC and the United States Department of Justice from enforcing gaming laws against the Tribe. On June 28, 1996, the Tribe reopened its gaming facility, which it has continued to operate during the pendency of this lawsuit.

On July 2, 1996, the United States filed a complaint against the Tribe seeking orders declaring that the Tribe's conduct of class III gaming violates federal and state law, enforcing the Chairman's closure order, and enjoining the Tribe from conducting class III gaming without a valid tribal-state compact. These lawsuits were consolidated with the agreement of the two parties.

The District Court dismissed the Tribe's case on July 7, 1996, holding that the Chairman's temporary closure order was not final agency action subject to judicial review. The court likewise dismissed the government's case, holding that the United States was not entitled to a civil injunction enforcing the Chairman's order (which, although temporary, was still in effect) because the IGRA vested authority to enforce such orders with the NIGC and its Chairman. The court also held that civil injunctive relief could not be employed to enjoin the Tribe's purportedly illegal activities. Finally, the court held that there was no statute granting the court authority to enjoin the Tribe's gaming activities and that these activities had not been established as a nuisance subjecting them to injunction under state law.

On July 31, 1996, the NIGC upheld on appeal the Chairman's order of temporary closure, whereupon that order became final. Subsequently, on August 7, 1996, the United States filed a motion with the District Court seeking leave to file a supplemental pleading given that the NIGC had issued its final order. On December 31, 1996, the District Court denied the government's motion and suggested that the United States was empowered only to pursue criminal prosecution under the IGRA and that the NIGC had "neither authorized nor directed the United States Attorney to attempt to enforce the

Commission's order by seeking a civil injunction." Memorandum Opinion & Order at 6 (Dec. 31, 1996).

The United States appeals the decision of the District Court refusing to enjoin the Tribe's gaming activities and declining to enforce against the Tribe the closure order of the Chairman of the NIGC.

## II.

We initially must determine whether the United States, acting through the Attorney General and her United States Attorneys, is entitled to maintain this action to enforce the closure order issued by the NIGC. The government contends that the broad grant of authority to litigate given to the Attorney General and her United States Attorneys under 28 U.S.C. § 516 (1994) encompasses an action to enforce the NIGC's closure order intended to prevent the Tribe's illegal gaming activity. Section 516 provides, "Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, . . . is reserved to officers of the Department of Justice, under the direction of the Attorney General." The Tribe, on the other hand, contends that the Attorney General has no authority under § 516 to enforce closure orders issued by the NIGC or its Chairman. We hold that the Attorney General is empowered under § 516 to seek enforcement of the closure orders of the NIGC.

The IGRA authorizes the Chairman of the NIGC to issue temporary closure orders as well as to assess civil fines for violations of the Act, the NIGC regulations, or tribal ordinances, see 25 U.S.C. §§ 2705(a)(1), 2713(a)(1), 2713(b)(1), and provides for appeal of the Chairman's decisions to the full Commission, which may dissolve or make permanent the Chairman's orders, see id. §§ 2706(a)(5), 2713(b)(2). The NIGC's final orders are then appealable to the district court. See id. § 2713(c). Neither the

IGRA nor its accompanying regulations grants specifically to the NIGC or its Chairman independent authority to litigate the agency's decisions. Nor does the IGRA address specifically the Attorney General's authority to institute judicial proceedings on behalf of the Chairman or the NIGC to enforce closure orders or assessments of civil fines.

Because the IGRA is silent with respect to the authority to conduct litigation necessary to enforce the NIGC's closure orders in the event those orders are ignored or its assessments are left unpaid by Indian Tribes engaging in gaming activities in violation of the Act, we must assume that Congress intended for the Attorney General to conduct this enforcement function on behalf of the agency.[3] "Pursuant to 28 U.S.C. § 516, the Attorney General has exclusive authority and plenary power to control the conduct of litigation in which the United States is involved, unless Congress specially authorizes an agency to proceed without the supervision of the Attorney General." United States v. Hercules, Inc., 961 F.2d 796, 798 (8th Cir. 1992) (construing Attorney General's authority under CERCLA to enter cost recovery settlement). Furthermore, the Attorney General may file suit on behalf of the United States without specific statutory authority whenever the United States has a justiciable interest. See United States v. Republic Steel Corp., 362 U.S. 482, 492 (1960) ("The test [is] whether the United States [has] an interest to protect or defend."). "[T]he statutory authority of the Attorney General to control litigation is not diminished without a clear and unambiguous directive from Congress." Hercules, 961 F.2d at 798; see also Federal Trade Comm'n v. Guignon, 390 F.2d 323, 324 (8th Cir. 1968) (noting that agencies can

_____

[3]We note that the United States Attorney appeared before the District Court and announced his representation of the United States and all other named defendants in this action without complaint from the Tribe. Furthermore, the District Court noted in its Findings of Fact and Conclusions of Law at 2 (July 10, 1996) that although the Tribe's complaint did not name the United States as a defendant and was filed only against the named defendants including the NIGC, it was "actually a suit against the United States as defendant." Again, the Tribe was not heard to complain of the court's conclusion.

conduct their own litigation only when granted "specific authorization to proceed without the advice, assistance or supervision of the Attorney General").

We cannot imagine that Congress intended to vest in the Chairman and the NIGC the power to assess fines against the tribal operators of the facilities and to order temporary closures of Indian gaming facilities operating in violation of the IGRA without providing for a means to ensure compliance with those decisions. The IGRA's silence on the matter of enforcement of the Chairman's closure orders compels our conclusion that the broad authority to litigate granted to the Attorney General under 28 U.S.C. § 516 envisions the action taken here by the United States Attorney to enforce, on behalf of the NIGC and the United States as an interested party, the Chairman's order demanding that the Tribe close its gaming facility.

## III.

Because we conclude that the United States has the authority to pursue this litigation, we must next address the government's contention that the District Court improperly refused to enforce the Chairman's closure order. We review the District Court's analysis of federal statutory law de novo. See Rifkin v. McDonnell Douglas Corp., 78 F.3d 1277, 1280 (8th Cir. 1996). The Chairman's closure order was based on the absence of a compact between the Tribe and the State of Nebraska permitting the conduct of class III gaming on the Tribe's lands, as required under the IGRA. It is undisputed before this Court that the video slot, poker, and blackjack machines being operated by the Tribe constitute class III gaming devices as defined under the IGRA. Likewise, it is undisputed that the Tribe and the State of Nebraska have not entered into a tribal-state compact to allow class III gaming on the Tribe's lands. The District Court concluded, however, that, "[a]lthough it would appear that the Chairman's closure order does remain in effect notwithstanding the Tribe's appeal of that order to the Commission, I find that the United States is not entitled to civil injunctive relief

-7-

enforcing that order." Findings of Fact and Conclusions of Law at 9-10 (July 10, 1996). The District Court reasoned that any civil remedy available under the IGRA for violations of the Chairman's closure order was limited to the imposition of fines by the Chairman under 25 U.S.C. § 2713(a), and that the government was empowered under the IGRA to seek only criminal prosecution of violations of the Chairman's orders. We conclude, however, that under 25 U.S.C. § 2713(a), the Chairman is authorized to assess fines for violations of the IGRA itself, not for violations of closure orders entered under the auspices of the IGRA, and that the United States may pursue injunctive relief to ensure the Tribe's compliance with the Chairman's closure order.

Section 2713 of the IGRA, entitled "Civil penalties," grants the Chairman the power to either levy and collect fines for "any violation" of any tribal regulation, any provision of the IGRA, or any regulation prescribed by the NIGC, 25 U.S.C. § 2713(a), or to issue orders of temporary closure for "substantial violation" of tribal regulations, any provision of the IGRA, or any NIGC regulation, 25 U.S.C. § 2713(b). In the Commission's regulations, temporary closure orders are included in the section entitled "enforcement," 25 C.F.R. pt. 573 (1996) (covering notices of violation and orders of temporary closure), while civil fines are in a separate self-titled section, see id. pt. 575 (1996) (covering how and when civil fines will be assessed, as well as settlements, reductions, waivers, and final assessments). Section 575.4 of the NIGC regulations addresses when civil fines will be assessed and does not include the imposition of fines for non-compliance with the Chairman's closure orders.

The text of the statute distinguishing between the options available to the Chairman for violations of the Act and its accompanying regulations, as well as the regulations themselves classifying closure orders as an enforcement mechanism distinct from the assessment of civil fines, indicates that the Chairman's authority to levy fines was not intended as a means of enforcing closure orders. We conclude that the District Court erred in refusing to enforce the Chairman's closure order on this basis.

## IV.

The United States next argues that, because it was entitled to pursue this litigation on behalf of the Chairman and the NIGC to stop the Tribe's illegal activity and because the assessment of civil fines is not an option available under the IGRA to ensure compliance with the Chairman's closure orders, the District Court erred in refusing to issue an injunction enjoining the Tribe from the further conduct of class III gaming. "[I]njunctive relief should not be considered unless the record shows 'a real threat of [a] future violation [of the law] or a contemporary violation of a nature likely to continue or recur.'" Webb v. Missouri Pac. R.R., 98 F.3d 1067, 1068 (8th Cir. 1996) (quoting United States v. Oregon State Med. Soc'y, 343 U.S. 326, 333 (1952) (internal quotation alterations in Webb)). Because the Tribe's gaming activities constitute a continuing violation of Nebraska law made applicable in Indian country through the IGRA, we conclude that the District Court erred in refusing to issue an injunction--a remedy available under Nebraska law. See infra Part IV.B.

## A.

The Tribe's gaming activities violate the IGRA because they are being conducted in contravention of Nebraska law. Under the IGRA, an Indian tribe may engage in a gaming activity on tribal lands only if that specific gaming activity is permitted under the laws of the State where the tribal land is located. See 25 U.S.C. § 2710(d)(1)(B).[4] The IGRA also provides that "for purposes of Federal law, all State laws pertaining to

---

[4]Section 2710(d)(1) of Title 25 of the United States Code provides that class III gaming shall be permissible on Indian lands only if the activities are authorized by a tribal ordinance or resolution; "located in a State that permits such gaming for any purpose by any person, organization, or entity"; and "conducted in conformance with a Tribal-State compact."

the licensing, regulation, or prohibition of gambling, including but not limited to criminal sanctions . . . shall apply in Indian country in the same manner and to the same extent as such laws apply elsewhere in the State."  18 U.S.C. § 1166(a) (emphasis added).

It is undisputed that the Tribe is operating video poker, blackjack, and slot machines in its gaming facility.  These forms of gambling are illegal in Nebraska, see State ex rel. Spire v. Strawberries, Inc., 473 N.W.2d 428, 436 (Neb. 1991) (per curiam) (labeling video poker, blackjack, and dice machines "gambling devices" within the meaning of Nebraska Revised Statutes § 28-1101), because the possession or operation of a "gambling device," including "any mechanical gaming device, computer gaming device, electronic gaming device, or video gaming device which has the capability of awarding something of value," is prohibited, Neb. Rev. Stat. § 28-1101(5) (1995); see also id. § 28-1107 (1995).  This language is incorporated into related Nebraska statutes authorizing certain forms of gambling in the State.  See id. §§ 9-204(2) (Supp. 1996) (defining "bingo" to exclude any "mechanical gaming device, computer gaming device, electronic gaming device, or video gaming device" and any activity prohibited under Nebraska Revised Statutes Chapter 28, article 11); 9-411(2) (Supp. 1996), 9-507(2) (Supp. 1996) (defining "lottery" to exclude "any gambling scheme which uses any mechanical, computer, electronic, or video gaming device which has the capability of awarding something of value" and any activity prohibited under Nebraska Revised Statutes Chapter 28, article 11);  § 9-312 (Supp. 1996) (defining "[l]ottery by the sale of pickle cards" to exclude any activity prohibited under Chapter 28, article 11); see also id. §§ 9-607(2) (Supp. 1996) (defining "lottery" to exclude "any gambling scheme which uses any mechanical gaming device, computer gaming device, electronic gaming device or video gaming device"), 9-701(1)(a)  (Supp. 1996) (excluding from the definition of "gift enterprise" "any . . . player-activated electronic or electromechanical facsimile of any game of chance; or any slot machine of any kind"); 9-803(5)(b) (Supp. 1996) ("[l]ottery game shall not be construed to mean any video lottery game").  The

video gaming devices operated by the Tribe clearly fall within the definition of prohibited "gambling devices" under Nebraska law and, by virtue of 25 U.S.C. § 2710(d)(1)(B) and 18 U.S.C. § 1166, are likewise prohibited under the IGRA.

The Tribe's argument that its gaming devices are permitted under the Nebraska statutes is not well taken given the uniform prohibition of these devices under the State's statutory scheme. As noted above, the State has consistently excluded from permitted gambling activities the use of gaming devices similar to those operated by the Tribe. The Tribe argues that, because the Nebraska Attorney General and the Nebraska Department of Revenue have approved the use of a device known by the acronym "SLOTS" (Selective Lottery Output Terminal System) to display keno results, the State has approved the use of video gaming devices. This argument, however, fails to take into account the fundamental difference between "SLOTS" and a traditional slot machine. The "SLOTS" device is only a means of allowing keno players to view keno results, and, unlike a slot machine, is not a means of conducting the game itself. See Opinion of Nebraska Attorney General at 11 (Sept. 18, 1995).

Because the video gambling engaged in by the Tribe is not permissible under Nebraska law, this activity is being conducted in violation of the IGRA, and the contention of the United States that it is entitled to an injunction from the District Court enjoining the further conduct of such activity by the Tribe is correct.

**B.**

In denying the government's request for injunctive relief, the District Court relied on the maxim that equity generally will not enjoin the commission of a crime. See, e.g., 11A Charles Alan Wright et al., Federal Practice and Procedure § 2942, at 70 (2d ed. 1995). As noted by the District Court, this general rule has three exceptions under

-11-

which an injunction will issue:  1) in cases of national emergency; 2) in cases of widespread public nuisance; and 3) in cases where a statute grants a court the power to enjoin a crime.  See id. at 71-74.  The government argues that the language of 18 U.S.C. § 1166(a), which makes "all State laws" pertaining to gambling applicable in Indian country, encompasses the State's civil and criminal statutory and case law.  According to the government, "all State laws" necessarily includes Nebraska civil case law authorizing injunctive relief to effectuate the closure of gambling establishments determined under State law to be public nuisances.  We agree.

The IGRA incorporates by reference "all State laws pertaining to the licensing, regulation, or prohibition of gambling . . . in the same manner and to the same extent as such laws apply elsewhere in the State," 18 U.S.C. § 1166(a), and does not distinguish between case law and statutory law.  The Rules of Decision Act, 28 U.S.C. § 1652 (1994), provides that the "laws of the several states . . . shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."  The United States Supreme Court has pronounced that "judicial decisions" are laws of the state within the meaning of the Rules of Decision Act.  Commissioner v. Estate of Bosch, 387 U.S. 456, 464 (1967).  We hold that the IGRA's incorporation of "all State laws" includes both state statutory and case law.

In Strawberries, the Nebraska Supreme Court specifically held that a gaming operation offering video gambling machines much like those operated by the Tribe constituted a public nuisance under Nebraska law.  See 473 N.W.2d at 435 (citing cases). The Court further noted that an injunction is the proper remedy to protect "public rights, property, or welfare, whether or not the acts complained of violate a criminal statute or constitute a nuisance."  Id. at 436.   Injunctive relief may be granted by a court "where there has been a continuing and flagrant course of violations of the law even though these acts may be subject to criminal prosecution."  Id.

-12-

Here, the Tribe's conduct of illegal gambling has been "continuing and flagrant" and, although potentially subject to criminal prosecution by the United States under the provisions of the IGRA, this activity is likewise subject to injunctive relief pursuant to applicable Nebraska law. The Tribe's ongoing gambling activity constitutes a continuing and flagrant violation of law that the District Court should have enjoined pursuant to Nebraska law.

Because injunctive relief is available to halt illegal gambling activity under Nebraska State law, see Strawberries, 473 N.W.2d at 436-37, this relief has been made available under federal law by virtue of 25 U.S.C. § 1166, and the District Court erred in refusing to grant the government's request for an order enjoining the Tribe's gaming activities.

## V.

The Tribe argues that because of the Supreme Court's determination in Seminole Tribe that Congress was not empowered to authorize lawsuits by Indian tribes against states that fail to negotiate in good faith for a tribal-state compact, all provisions of the IGRA related to compacting are unconstitutional. We decline to address this argument given our conclusion that, under the IGRA, the State is not required to negotiate for gambling that is illegal under Nebraska law. See Cheyenne River Sioux Tribe v. South Dakota, 3 F.3d 273, 279 (8th Cir. 1993) ("The 'such gaming' language of 25 U.S.C. § 2710(d)(1)(B) does not require the state to negotiate with respect to forms of gaming it does not presently permit."); see also Citizen Band Potawatomi Indian Tribe v. Green, 995 F.2d 179, 181 (10th Cir. 1993) ("Congress must have meant that gambling devices be legal [within state law] absent the Tribal-State compact; otherwise it would not have been necessary to require both that gambling devices be legal, 25 U.S.C. § 2710(d)(6)(A), and that the compact be 'in effect,' id. § 2710(d)(6)(B)."). As we already have determined, the class III gambling activities in which the Tribe is engaged

-13-

are illegal under Nebraska law, ruling out any duty on the part of the State to negotiate a compact with the Tribe for such gambling.

## VI.

The decision of the District Court is reversed and the case remanded for entry of an order enjoining the Tribe's operation of class III gaming devices and enforcing the Chairman's closure order.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT