REQUESTED BY: Senator Ray Janssen Nebraska Legislature
You have requested our opinion concerning the effect of passage of two initiative measures which propose to amend the Nebraska Constitution to authorize the use of video or electronic gambling devices. The first petition, filed with the Secretary of State on November 6, 2001, proposes to amend the Nebraska Constitution to add a new section 25 to Article XV which, if approved, would create the "Nebraska Video and Electronic Gaming Commission" [the "Commission"]. The Commission, appointed by the Governor with approval of a majority of the Legislature, would be empowered "to establish policy for the conduct of video and electronic gaming in the State of Nebraska." Under the initiative, "video and electronic gaming devices" could only be authorized "on premises licensed to sell alcoholic liquor for consumption on the premises. . . ." "No more than ten video and electronic gaming devices [could] be placed in any licensed location." The second petition, filed with the Secretary of State on December 26, 2001, proposes to add a new article to the Nebraska Constitution providing that "any community may establish and conduct gaming using player activated electronic gaming devices. . . ." This initiative provides for the creation of a "gaming commission" to regulate such gambling, which would be allowed "only on premises which are licensed to sell alcoholic liquor for consumption on the premises and shall be conducted only by [licensed] persons and entities. . . ." "Player activated electronic gaming devices" is defined as "all forms of gaming devices where the element of chance is a product of a computer process running contemporaneously with the play and where the game is activated by the player or players thereof."
Initially, you request advice on the effect of passage of either of these initiatives "on the allowance of Class III gaming in general," and whether, if adopted, "Class III gaming [would] be allowed in its entirety in the state?" The term "Class III gaming" is contained in the federal statutory scheme governing the conduct of Indian gaming known as the Indian Gaming Regulatory Act, 25 U.S.C. § 2701-2721 ["IGRA" or the "Act"]. IGRA divides gaming into three classes: (1) "class I gaming," which includes social gaming for minimal prizes and traditional gaming conducted at tribal ceremonies or celebrations; (2) "class II gaming," which is defined to include "the game of chance commonly known as bingo (whether or not electronic, computer, or other technologic aids are used in connection therewith) . . . including (if played in the same location) pull-tabs, lotto, punch boards, tip jars, instant bingo, and other games similar to bingo . . . "; and (3) "class III gaming," which "means all forms of gaming that are not class I gaming or class II gaming."25 U.S.C. § 2703(6)-(8). Class I gaming on Indian lands is within the jurisdiction of the tribes and is not subject to the Act. Id. § 2710(a)(1). Class II gaming is within the jurisdiction of the tribes if "such Indian gaming is located within a State that permits such gaming for any purpose by any person, organization, or entity . . ." and is authorized by a tribal ordinance or resolution, subject to the provisions of the IGRA and oversight by the National Indian Gaming Commission. Id. § 2710(a)(2), (b)(1)(A), (B). Class III gaming activities are "lawful on Indian lands only if such activities are" authorized by a tribal ordinance or resolution, "located in a State that permits such gaming for any purpose by any person, organization, or entity," and "conducted in conformance with a Tribal-State compact entered into by the Indian Tribe and the State. . . ." Id. at § 2710(d)(1)(A)-(C).
"Class III gaming" is a term defined in the IGRA. The IGRA governs the conduct of gaming by Indian tribes on Indian lands. Apart from the conduct of gaming by Indian tribes on Indian lands, the term "Class III gaming" has no relevance to the conduct of gaming activities in the State of Nebraska. Thus, in response to your initial question, we conclude that passage of either of the initiative amendments would not allow "Class III gaming" in the State "in its entirety," as the term "Class III gaming" has no application to the conduct of gaming in Nebraska apart from gaming conducted by Indian tribes on Indian lands under the provisions of the IGRA.
Your second question concerns the effect of passage of the proposed constitutional amendments allowing video or electronic gambling "on the legality of these types of gaming on Native American land. . . ." The first initiative measure would authorize the use of "video or electronic gaming devices" throughout Nebraska "on premises licensed to sell alcoholic liquor for consumption on the premises. . . ." The second initiative would allow communities to "establish and conduct gaming using player activated electronic gaming devices," provided such gaming is "conducted only on premises which are licensed to sell alcoholic liquor for consumption on the premises" by licensed persons or entities. The video or player activated electronic gaming devices the initiatives propose to authorize would constitute Class III gaming as defined in the IGRA. Pursuant to the IGRA, an Indian tribe must, prior to engaging in Class III gaming, negotiate a compact with the State governing the conduct of such gaming. 25 U.S.C. § 2710(d)(1); See also Neb. Rev. Stat. § 9-1,106 (1996) (authorizing the Governor, or his or her designated representative, to negotiate compacts with Indian Tribes for the conduct of Class III gaming as defined in the IGRA).
The State has consistently taken the position that the IGRA requires the State to negotiate a compact only for the conduct of those specific types of Class III gaming which the State "permits" to be conducted "for any purpose by any person, organization, or entity."25 U.S.C. § 2710(d)(1)(B). The State's view that only those specific forms of Class III gaming which are permitted under Nebraska law are subject to negotiation is consistent with decisions of both the Eighth Circuit Court of Appeals and the Ninth Circuit Court of Appeals. United States v. Santee Sioux Tribe of Nebraska, 135 F.3d 558 (8th Cir.), cert. denied 525 U.S. 813, 119 S.Ct. 48, 142 L.Ed.2d 37 (1998); Cheyenne River Sioux Tribe v. State of South Dakota, 3 F.3d 273 (8th Cir. 1993); Rumsey Indian Rancheria of Wintum Indians v. Wilson, 41 F.3d 421 (9th Cir. 1994), amended on denial of rehearing and rejection of suggestion for rehearing en banc 64 F.3d 1250, 1258 (1995), cert. denied sub nom Sycuan Band of Mission Indians v. Wilson, 521 U.S. 1118, 117 S.Ct. 2508 (1997); Coeur D'Alene Tribe v. State of Idaho, 51 F.3d 876 (9th Cir. 1995).
Should one or both of the proposed initiative measures garner sufficient valid signatures to be placed on the ballot, and obtain voter approval, the Nebraska Constitution would be amended to authorize gambling activity involving the use of certain "video or electronic gaming devices" or "player activated electronic gaming devices. To the extent such devices involve forms of Class III gaming as defined in the IGRA, an Indian tribe could request the State to negotiate a compact for the conduct of the new specific forms of Class III gaming activity permitted as a result of adoption of one or both initiatives.
Very truly yours,
 DON STENBERG Attorney General
 L. Jay Bartel Assistant Attorney General
Approved by:
____________________________ Attorney General
pc: Patrick O'Donnell Clerk of the Legislature