KEITH BARTHEL AND DOROTHY BARTHEL, HUSBAND AND WIFE, APPELLANTS, V. GENE LIERMANN AND ERNA LIERMANN, HUSBAND AND WIFE, APPELLEES.

509 N.W.2d 660

Filed December 14, 1993.   No. A-92-293.

Richard E. Gee for appellants.

David A. Domina and Cletus W. Blakeman, of Domina & Copple, P.C., for appellees.

CONNOLLY, IRWIN, and WRIGHT, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Keith and Dorothy Barthel are appealing the order of the Holt County District Court which denied their request for a mandatory injunction. The Barthels sought a court order requiring Gene and Erna Liermann to annually clean out a ditch that extends from the Barthels' land onto the Liermanns' land. The Barthels claim that Neb. Rev. Stat. § 31-224 (Reissue 1988) requires the Liermanns to clean out the ditch. The Barthels also sought recovery of damages for the loss of crops caused by flooding which occurred when the Liermanns negligently failed to maintain the ditch. The Liermanns counterclaimed, asserting that the Barthels had damaged the Liermanns' land by dredging the ditch too deep in 1983. The Liermanns also requested from the court a mandatory injunction ordering the Barthels to refill the ditch. The requests.

for mandatory injunction were denied, and the trial court failed to award damages to either party. The Barthels subsequently perfected this appeal, asserting that the trial court erred in failing to find that the Liermanns had obstructed the ditch, in failing to issue an injunction, in failing to award the Barthels damages, and in misstating the proper measure of damages. For the reasons recited below, we reverse the judgment and remand the cause for a mandatory injunction to issue and for the trial court to determine if the Barthels are entitled to damages for crop loss.

## II. SCOPE OF REVIEW

An action for an injunction sounds in equity. *City of Newman Grove v. Primrose*, 240 Neb. 70, 480 N.W.2d 408 (1992); *Kaiser v. Western R/C Flyers*, 239 Neb. 624, 477 N.W.2d 557 (1991); *Stuthman v. Adelaide D. Hull Trust*, 233 Neb. 586, 447 N.W.2d 23 (1989). In an appeal of an equity action, the appellate court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court; provided, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Vejraska v. Pumphrey*, 241 Neb. 321, 488 N.W.2d 514 (1992); *Dowd v. Board of Equal.*, 240 Neb. 437, 482 N.W.2d 583 (1992); *State v. Nebraska Assn. of Pub. Employees*, 239 Neb. 653, 477 N.W.2d 577 (1991); *Hartford v. Womens Services, P.C.*, 239 Neb. 540, 477 N.W.2d 161 (1991); *State v. Two IGT Video Poker Games*, 237 Neb. 145, 465 N.W.2d 453 (1991).

## III. FACTS

Keith and Dorothy Barthel, plaintiffs-appellants, own a 400-acre hay meadow in Holt County, Nebraska. The hay meadow, referred to by the parties as the "Grass Lake" or the "Grass Lakebed," lies within Sections 29, 32, and 33, Township 26 North, Range 15 West of the 6th P.M. The southeast section of the hay meadow is adjacent to property owned by Gene and Erna Liermann, defendants-appellees. The hay meadow, resting in the Sandhills of Nebraska, may be described as a

fairly flat basin where surface water drains from the surrounding hillsides. The south fork of the Elkhorn River runs across the hay meadow and exits at the southeast edge of the Barthels' property, where it enters the Liermanns' property. The parties testified that years ago a portion of the south fork, which crosses the boundary between the two properties, was straightened. This straightened portion is referred to as a "ditch," "drainageway," "streamway," or "natural drainageway," and it extends approximately 6,100 feet onto the Liermanns' property. The parties and the Liermanns' expert witness, Dr. Sanford Kaplan, assert that the ditch is indistinguishable from the south fork of the Elkhorn River. This testimony is supported by a 1932 Holt County soil survey map. A 1981 geological survey map by the U.S. Department of the Interior shows the course of the south fork of the Elkhorn River traversing the hay meadow and exiting what would now be considered the southeast corner of the Barthels' property. The river continues to meander in an easterly direction and eventually joins the Elkhorn River just southeast of Ewing, Nebraska.

The dispute between the parties surrounds that portion of the south fork of the Elkhorn River which the parties call, inter alia, the ditch. The Barthels assert that the ditch is obstructed and that this has caused the water which used to drain out of the hay meadow to back up and create a lake. Testimony by the parties and witnesses, which is supported by a review of the contour lines on both the soil survey and geological survey maps, reveals that the hay meadow has a very gradual slope toward the southeast corner of the Barthels' property. A survey was performed by Al Dearmont. He testified that the fall of the land entering the ditch area was .0328 feet per 100 feet. The survey of the ditch shows that the distance between the bottom of the ditch and the surrounding land varies between 3 and 7 feet.

Keith Barthel testified that in the late 1960's the hay meadow was graded to connect all the low spots so the surface water would drain into the ditch more efficiently. Since that time until 1987, the hay meadow has produced reed canary grass for the Barthels' stock and dairy cattle. This testimony was supported

by Bob Lowe, a ranch consultant, who viewed the hay meadow in 1974 and testified that it was "one of the best stands [of reed canary grass] that I had ever seen . . . ." Keith Barthel testified that traditionally in the spring the ditch would be frozen for a time and that 100 to 150 acres would flood until the ditch thawed. He also testified that the reed canary grass could survive this 3- to 4-week flood condition and, by June, could provide sufficient palatable food to feed all his cattle.

In the 1950's, even before the grading of the hay meadow, the ditch was dredged with a dragline because the flow of the water had slowed to a point where the water upstream on the Barthels' land was covering the grass too long for it to survive. In 1977, the ditch had to be cleared again. The cost of dredging the ditch was paid by the Barthels and an adjacent landowner, Blaine Garwood.

In the spring of 1983, the ditch was again partially obstructed, and Keith Barthel asked Garwood to contact Gene Liermann and seek permission to dredge the ditch. The Liermanns agreed to allow the dragline on their property, and the cost was again split between Garwood and the Barthels. The dragline operator testified that he believed he had dredged the ditch only as deep as it had been before the flow stopped and that when he was finished, the ditch flowed the full length. During the summer of 1983, the Barthels were able to harvest over 150 stacks of hay from the meadow. The Barthels continued to feed their cattle without having to pasture them on rental pasture or buy hay until 1987, when the ditch became obstructed and water covered nearly the whole meadow for the entire year. Keith Barthel testified that in 1988 Gene Liermann refused to dredge the ditch again. In 1988, the Barthels harvested 23 stacks of hay from the meadow. In 1989, 81 stacks were harvested; in 1990, 68 stacks were harvested; and in 1991, 30 stacks were harvested. To compensate for the loss of hay during these years, the Barthels had to purchase hay and pasture their cattle on rental pasture.

Gene Liermann testified at trial that he had acquired his property in the early 1970's. He claimed to maintain the ditch, monitoring where his cattle crossed and monitoring the weeds in the ditch so that nothing would block the waterflow. He

further testified that when he needed to have a roadway cross the ditch, he installed a culvert on his property to maintain the ditch's passage. Gene Liermann claimed that during each spring for the last several years, he or his son removed 3 to 6 inches of dirt from the ditch near the cattle crossings because the ditch needed to be cleared. It was his belief that the dredging of the ditch in 1983 made the ditch deeper than it originally had been and caused his crops adjacent to the ditch to suffer. Gene Liermann presented no facts to support these claims.

Charles Liermann, Gene's son, testified that the vegetation which had been removed from the ditch in the 1983 dredging returned by the next spring. Gene Liermann felt that the ditch had filled in since 1983, but "[n]ot any more than normal." He also asserted that he would not clean out the ditch because it was "a lot of expense and I don't think that it is the logical thing to do."

Following the trial, the court found that (1) the ditch was part of the south fork of the Elkhorn River system; (2) the ditch had been dredged in 1950, 1976 or 1977, and 1983 by the Barthels and third parties; (3) the drainage out of Grass Lake was good for several years, but that it would get progressively slower; and (4) the evidence showed that the drainage from Grass Lake was poor because of the following:

A. The flat topography of the draingage [sic] area.

B. The sandy soil type tends to cave in and refill the dredged ditch. . . .

C. Animal traffic across the drainage way. While some sand is dragged into the drainage way by cattle, the evidence does not show it is the primary cause of the poor drainage . . . .

The court then concluded that since the Barthels did not prove by a preponderance of the evidence that the Liermanns *caused the obstruction of the ditch*, the Barthels were not entitled to an injunction and could not recover damages. The court also found that the Liermanns failed to show that the Barthels had lowered the water table on the Liermanns' land or caused any damage by dredging the ditch in 1983. The Barthels subsequently perfected this appeal.

## IV. ANALYSIS

We will discuss the assigned errors in the sequence stated in part I. First, we will discuss the trial court's determination that the Barthels did not prove the Liermanns had obstructed the ditch and that, therefore, the Barthels were not entitled to injunctive relief. Second, we will discuss the trial court's determination that the Barthels were not entitled to damages.

### 1. INJUNCTION

■ A party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle the claimant to relief. *Romshek v. Osantowski*, 237 Neb. 426, 466 N.W.2d 482 (1991); *Uhing v. City of Oakland*, 236 Neb. 58, 459 N.W.2d 187 (1990); *Giger v. City of Omaha*, 232 Neb. 676, 442 N.W.2d 182 (1989). Injunction would be the appropriate remedy, since injunctive relief includes a court order "commanding someone to undo some wrong or injury." See Black's Law Dictionary 784 (6th ed. 1990).

The Barthels claim that the ditch is a watercourse and that pursuant to § 31-224, the Liermanns have a duty to clean the ditch once a year. The ultimate determination of this case depends upon a correct interpretation of § 31-224.

■ When asked to interpret a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. It is the court's duty to discover, if possible, legislative intent from the statute itself. *NC+ Hybrids v. Growers Seed Assn.*, 219 Neb. 296, 363 N.W.2d 362 (1985). In construing a statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose. *Sarpy County v. City of Springfield*, 241 Neb. 978, 492 N.W.2d 566 (1992). Section 31-224, which is essentially unchanged since its introduction by Senator J.H. Buhrman in 1911, provides:

> It shall be the duty of landowners in this state . . .
> owning or occupying lands through which a watercourse,
> slough, drainage ditch or drainage course lies, runs or has
> its course to clean such watercourse, slough, drainage
> ditch or drainage course at least once a year, between
> March 1 and April 15, of *all* rubbish, weeds or other
> substance blocking or otherwise obstructing the flow of
> the water in such watercourse, slough, drainage ditch or
> drainage course, whenever such obstruction is caused by
> any of the acts of said owner . . . *or with his [or her]
> knowledge or consent . . . .*

(Emphasis supplied.)

A watercourse is defined as "[a]ny depression or draw two feet below the surrounding lands and having a continuous outlet to a stream of water, or river or brook . . . ." Neb. Rev. Stat. § 31-202 (Reissue 1988).

In order for the Barthels to succeed, they must first show that the ditch is a watercourse, slough, drainage ditch, or drainage course. The evidence presented in the record, specifically the geological survey map, describes the current depth of the ditch as varying between 3 and 7 feet below the surrounding land. Furthermore, it is undisputed by the parties that the ditch is essentially a straightened portion of the south fork of the Elkhorn River and that the water from the ditch continues into the south fork of the Elkhorn River, which meanders across the state until it joins the Elkhorn River southeast of Ewing. Pursuant to the § 31-202, the ditch satisfies the requirements to be considered a watercourse, and we need not consider whether it is also a slough, drainage ditch, or drainage course. See, also, *Gruber v. County of Dawson*, 232 Neb. 1, 439 N.W.2d 446 (1989).

Second, to obtain injunctive relief, the Barthels must show that this watercourse "lies, runs or has its course" through the Liermanns' property. See § 31-224. This fact is undisputed by the parties.

Third, the Barthels must show that "rubbish, weeds or other substance[s]" are "blocking or otherwise obstructing the flow of the water" in the ditch. See *id*.

The trial court found that the flat topography of the hay

meadow and the sandy soil on the edge of the ditch were as responsible for the poor drainage of water from the meadow as the cattle that tramp the soil into the ditch. Although we can take into account that the trial court observed the witnesses, we must still review the matter "de novo without reference to findings of fact made by the trial court." *Belsky v. County of Dodge*, 220 Neb. 76, 80, 369 N.W.2d 46, 51 (1985).

The record shows that the ditch has been dredged by a dragline three times: first in the 1950's, next in the 1970's, and last in 1983. After each dredging, the water in the Barthels' hay meadow has drained. The parties agree that since the last dredging, the Liermanns' cattle have walked across the ditch at several points. These cattle crossings correspond to the most shallow points on the survey of the ditch. Photographs of these crossings in the record reflect how sand and other substances have been pulled into the ditch. Additional photographs show portions of the ditch which are completely filled with weeds or show algae growing on the surface of the water. The dragline operator testified that weeds like those in the photographs and dirt were removed during the 1983 dredging. After this dredging, the Barthels had gradually increasing problems with water backing up on their land for several years. Keith Barthel testified that in 1987 the water in the ditch was partially, if not totally, obstructed, as reflected by a photograph showing a small lake of water covering the hay meadow and engulfing a fence line. This lake remained on the hay meadow for the entire year. During subsequent years, the water in the hay meadow continued to fail to drain through the ditch, and the number of hay stacks recovered from the meadow continued to decline. During the summer after the last dredging, which was in 1983, the Barthels recovered over 150 stacks of hay from the meadow. In 1991, the Barthels recovered only 30 stacks. It is apparent that when the ditch is dredged, the Barthels do not have a lake on their hay meadow. We find this evidence sufficient to support a finding that the flow of water in the ditch is obstructed; the hay meadow does not merely drain slowly.

Since the evidence supports a finding that the ditch is obstructed, the Barthels must now show that it was the acts of the Liermanns which caused the obstruction of the ditch *or that*

*the obstruction occurred with their knowledge or consent.* See § 31-224.

As noted in part III above, the record indicates that the Liermanns admit that they maintained the ditch, monitored where their cattle crossed the ditch, and monitored the weeds in the ditch. Gene Liermann also claimed that in the last couple of years before trial he or his son removed 3 to 6 inches of dirt from the ditch near the cattle crossings. Gene Liermann also admitted that the ditch had filled in since the dredging in 1983, although "[n]ot any more than normal." Although the record does not support a finding that the Liermanns affirmatively caused an obstruction of the ditch, see *Romshek v. Osantowski*, 237 Neb. 426, 466 N.W.2d 482 (1991) (holding that the defendants' leveling of their field caused an obstruction of a natural drainageway), the record does support a finding that the Liermanns were aware of the cattle walking in the ditch and of the weeds growing in the ditch and admitted that the ditch was filling in with various substances. Section 31-224 provides that it is the duty of a landowner to clean from this type of ditch once a year *all* weeds or other substances obstructing the flow of the water, provided the landowner knows of the obstruction. The Liermanns know about the cattle and the weeds and know that the ditch is filling in; therefore, they have a duty to clean the ditch of all substances causing the obstruction. The trial court was correct in finding that the Liermanns did not *cause* the obstruction, but the trial court apparently failed to consider whether the obstruction occurred "with [the Liermanns'] knowledge or consent." See § 31-224. It is clear from the record that the Liermanns knew of the obstruction; yet, they failed to remove the obstruction as contemplated by § 31-224. The trial court's refusal to grant the injunction was error.

█ Mandatory injunctions are equitable remedies which require the defendant to perform some affirmative act to maintain, or return the parties to, the status quo. See *City of Beatrice v. Williams*, 172 Neb. 889, 112 N.W.2d 16 (1961) (holding that a mandatory injunction should issue requiring the defendants to remove the part of the building which extended beyond the 20-foot setback provided for by city ordinance). Mandatory injunction is an extreme or harsh remedy and must

be exercised sparingly and cautiously. See 42 Am. Jur. 2d *Injunctions* § 26 (1969).

In the case at bar, the cause must be remanded to the district court for a mandatory injunction to issue requiring the Liermanns to clean out the ditch. The mandatory injunction need not be perpetual because the interpretation of § 31-224 by this court notifies the Liermanns that they are required, by law, to clean the ditch of *all* weeds or other substances obstructing the flow of the water, provided they *know* about the substances.

## 2. LIABILITY AND DAMAGES

The Barthels assert on appeal that the trial court "did not state the proper measure of damages." Brief for appellants at 5. The Barthels urge this court on appeal to "aid the parties by discussing the measure of damages." *Id.* at 31.

█ This court recognizes that it is appropriate for a trial court in an equity action to consider all factual issues at one time, "bearing in mind that it speaks as a court of law regarding issues of fact arising from the pleadings in law, and as a court of equity regarding issues of fact arising from" pleadings in equity. *Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 466, 428 N.W.2d 141, 149 (1988).

From a review of the record, we are uncertain that the trial court ruled on the issue of liability or on the measure of damages. Unlike the injunctive relief discussed in part IV, subsection 1, the issues of liability and damages discussed in the instant subsection are issues of law, not equity. We can find no authority which would allow this court to determine a question of law that has not first been determined or ruled upon by a trial court.

█ The Nebraska Supreme Court has long held that in appellate proceedings, the examination by the appellate court is confined to questions which have been determined by the trial court. *Lickert v. City of Omaha*, 144 Neb. 75, 12 N.W.2d 644 (1944). See, also, *Gas 'N Shop v. State*, 234 Neb. 309, 451 N.W.2d 81 (1990) (holding that the Supreme Court does not render advisory opinions, but simply decides cases and controversies). An issue not presented to *or passed on* by the

trial court is not appropriate for consideration on appeal. *Underwriters Acceptance Corporation v. Dunkin*, 152 Neb. 550, 41 N.W.2d 855 (1950). In *Underwriters Acceptance Corporation*, the defendant claimed on appeal that the trial court had erred in failing to enjoin the plaintiff from instituting a replevin action while an equity action, instituted by the defendant, was pending in the district court. The defendant included the transcript of each action in the record when he appealed the judgment in the replevin case. The cases were not consolidated. The Nebraska Supreme Court held that the replevin action did not contain a ruling from the trial court regarding the above-mentioned issue, and therefore, the court would not consider the issue on appeal. The court further stated that although the record contained orders from the equity action, the mere inclusion of the orders in the record for the replevin action was insufficient to make them orders in the replevin action. The court then reiterated the rule that "[e]rror cannot be predicated upon rulings which have never actually been made in the case appealed." *Id.* at 552, 41 N.W.2d at 857.

The factual scenarios in most of the remaining cases which hold that an issue will not be reviewed unless it was presented to or passed on by the trial court, involve an issue which was not presented to the trial court for decision. See, *Wagner v. City of Omaha*, 236 Neb. 843, 464 N.W.2d 175 (1991); *Hensman v. Parsons*, 235 Neb. 872, 458 N.W.2d 199 (1990); *Beaver Lake Assn. v. Sorensen*, 231 Neb. 75, 434 N.W.2d 703 (1989); *Guynan v. Guynan*, 208 Neb. 775, 305 N.W.2d 882 (1981). This does not defeat the fact that an appellate court reviews only the determination or ruling of a trial court, not the reasoning behind the ruling. See *Wymore v. Wymore*, 239 Neb. 940, 479 N.W.2d 778 (1992) (holding that where the record demonstrates that the decision of the trial court is correct, although such correctness is based on a different ground from that assigned by the trial court, an appellate court will affirm the ruling). See, also, *State v. $15,518*, 239 Neb. 100, 474 N.W.2d 659 (1991); *Staman v. Yeager & Yeager*, 238 Neb. 133, 469 N.W.2d 532 (1991); *Weimer v. Amen*, 235 Neb. 287, 455 N.W.2d 145 (1990).

Another case somewhat analogous to the present case is *Johnson v. NM Farms Bartlett*, 226 Neb. 680, 414 N.W.2d 256

(1987). In that litigation, there was a stipulation at the trial level that no evidence concerning damages would be presented until after the issue of liability had been resolved. Nevertheless, the trial court determined that Johnson was not entitled to damages. On appeal, the Nebraska Supreme Court held that the trial court had resolved an issue not yet before it. The Supreme Court went on to state:

> If the district court meant by its decision to rule that it did not award damages because it found NM Farms had no liability to Johnson, we cannot discern that intention from the mere fact that the court denied Johnson's prayer for a permanent injunction. Since the purpose of an injunction is preventive, protective, and prohibitory, and it will not issue against discontinued acts unless there are probable grounds to believe there will be a resumption of the violations or activities, *Stuthman v. Lippert*, 205 Neb. 302, 287 N.W.2d 80 (1980), such a ruling could just as well flow from a conclusion that it was unlikely NM Farms would in the future discharge its diffused surface waters onto Wheeler III's land.

*Johnson*, 226 Neb. at 687-88, 414 N.W.2d at 263.

In the case at bar, the order of the trial court provides: "7. Because the Plaintiffs have not shown that the Defendants have obstructed the drainageway, they are not entitled to a mandatory injunction and cannot recover damages from Defendants."

It is not apparent from this language that the trial court denied the injunction and damages because it found that the Liermanns were not liable in the negligence action or, alternatively, that the Liermanns were liable but insufficient proof of damages was presented. The statement could just as well flow from a mistaken conclusion that only a violation of § 31-224 results in liability, thus providing a basis for damages. During the trial, the court expressed a view from the bench as to the measure of damages it thought would be appropriate. The trial court did not issue a ruling on the measure of damages. At most, the trial court expressed what might have been the reasoning behind a ruling if the Barthels would have succeeded

in the action. Since there is no ruling for this court to review, the assigned error will not be addressed.

## V. CONCLUSION

In light of the fact that we reverse the trial court's denial of the injunction, the cause must be remanded for a mandatory injunction to issue commanding the Liermanns to comply with § 31-224. Also, the trial court is to hold a hearing to determine if the Liermanns are liable to the Barthels for damages sustained to the hay crops and, if so, the appropriate measure of damages.

REVERSED AND REMANDED.