releasing the funds became final and appealable. John has not perfected an appeal from that order.

Because John has not separately appealed from the order releasing nonexempt funds, we do not have jurisdiction to consider his arguments related to that order.

## V. CONCLUSION

For the reasons stated herein, we do not have jurisdiction of John's appeal as it relates to the modification order, due to his failure to timely appeal from that order. We also find that we are without jurisdiction to review John's arguments as they relate to the garnishment proceedings. Finally, we affirm the district court's decisions regarding John's contempt application.

AFFIRMED IN PART, AND IN PART DISMISSED.

---

CRAIG LYNN BARTHEL ET AL., COPERSONAL REPRESENTATIVES OF
THE ESTATE OF DOROTHY BARTHEL, DECEASED, APPELLANTS,
v. CHARLES A. LIERMANN, INDIVIDUALLY AND AS
SUCCESSOR TRUSTEE OF THE GENE W. LIERMANN
LIVING REVOCABLE TRUST, AND ERNA E. LIERMANN,
TRUSTEE OF THE ERNA E. LIERMANN LIVING
REVOCABLE TRUST, APPELLEES.

___ N.W.2d ___

Filed January 28, 2014.    No. A-12-745.

1.  **Statutes.** The meaning and interpretation of a statute are questions of law.
2.  **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
3.  **Statutes: Appeal and Error.** When an appellate court confronts a statute, it gives statutory language its plain and ordinary meaning and will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.
4.  **Statutes: Judicial Construction: Legislature: Presumptions: Intent.** When judicial interpretation of a statute has not evoked a legislative amendment, it is presumed that the Legislature has acquiesced in the court's interpretation.
5.  **Real Estate: Waters: Time.** Neb. Rev. Stat. § 31-224 (Reissue 2008) imposes upon a landowner the duty to clean a drainage ditch once a year, between March 1 and April 15.

6. **Real Estate: Waters: Time: Words and Phrases.** In Neb. Rev. Stat. § 31-224 (Reissue 2008), the phrase "at least" prior to "once a year" indicates that a landowner may have a duty to clear the ditch more than once during the specified period of March 1 to April 15, if the flow of water again becomes obstructed during this period.

7. **Real Estate: Waters: Time.** There is nothing in Neb. Rev. Stat. § 31-224 (Reissue 2008) that can be interpreted to require a landowner to clean a drainage ditch outside the March 1 to April 15 period if the flow of water becomes obstructed at any other time during the year.

Appeal from the District Court for Holt County: MARK D. KOZISEK, Judge. Affirmed.

Mark Porto, of Shamberg, Wolf, McDermott & Depue, for appellants.

Mark D. Fitzgerald, of Fitzgerald, Vetter & Temple, for appellees.

INBODY, Chief Judge, and MOORE and RIEDMANN, Judges.

MOORE, Judge.

## INTRODUCTION

Craig Lynn Barthel, Keith Alan Barthel, and Kerry Louis Barthel, as copersonal representatives of the estate of Dorothy Barthel, deceased, and having been substituted as parties, appeal from a judgment entered by the district court for Holt County. Following a bench trial, the district court ruled that the appellees, Charles A. Liermann and Erna E. Liermann, had not breached their duty to clean a shared drainage ditch and that Dorothy had not sufficiently proved her damages. Finding no error in that decision, we affirm the district court's judgment.

## FACTUAL BACKGROUND

The parties in this case are neighboring landowners in Holt County, Nebraska. A drainage ditch that runs west to east through the Barthels' property and onto the Liermanns' property before eventually joining the Elkhorn River forms the center of this ongoing dispute. Dorothy claimed that the Liermanns had failed to clear obstructions from this ditch,

causing her hay meadow to flood and thereby preventing significant hay production.

This seemingly ordinary drainage ditch has been the subject of significant litigation, in both state and federal courts, during the past 20 years. While not all of the history is germane to the present appeal, a short summary of the more important events is necessary to give context to the current matter. This court's decision in *Barthel v. Liermann*, 2 Neb. App. 347, 509 N.W.2d 660 (1993), is the appropriate starting point. After that decision, a series of events transpired that culminates with this current appeal.

In the years preceding *Barthel v. Liermann, supra*, the Liermanns had allowed Keith and Dorothy to bring a dragline onto their property to dredge the ditch on the various occasions when the waterflow in the ditch became obstructed. In 1988, the Liermanns denied the Barthels' request to dredge and the Barthels filed suit, asking that an injunction issue requiring the Liermanns to clear the ditch. The district court denied the Barthels' request for injunctive relief and damages, concluding that they had not established that the Liermanns obstructed the waterflow in the ditch. *Id*. The Barthels appealed that decision to this court.

We reversed the district court's decision. In so ruling, we determined that the outcome of the case was dependent on interpreting Neb. Rev. Stat. § 31-224 (Reissue 2008). *Barthel v. Liermann, supra*. In interpreting § 31-224, we stated that "it is the duty of a landowner to clean from this type of ditch once a year all weeds or other substances obstructing the flow of the water, provided the landowner knows of the obstruction." *Barthel v. Liermann*, 2 Neb. App. at 356, 509 N.W.2d at 665 (emphasis omitted). We concluded the statute obligated the Barthels to show that the Liermanns' acts caused the ditch obstruction or that the obstruction occurred with the Liermanns' knowledge or consent. *Barthel v. Liermann, supra*. We also found that the evidence clearly established that the obstruction occurred with the Liermanns' knowledge or consent. Therefore, we determined that the trial court erred when it refused to grant the injunction, and we remanded the cause to

the district court to issue a mandatory injunction requiring the Liermanns to clean out the ditch. *Id.*

On remand, the district court issued the mandated injunction. The injunction required the Liermanns to clean the ditch of all substances obstructing waterflow beginning and ending at specified stations. The Liermanns were also required to hire a surveyor to establish a grade to which the ditch would be excavated and to hire a dragline operator to excavate the ditch according to the completed survey. The court specified that the grade needed to be set at or below the level of the bottom of the culvert installed by Holt County in the county road in 1988.

Because the cleaning and maintenance of this ditch affected a potential wetland area (the Barthels' meadow), the federal government became involved. To maintain their eligibility for federal farm-assistance programs sponsored by the U.S. Department of Agriculture (USDA), the Barthels were required to comply with the "Swampbuster" provisions of the federal Food Security Act (the Act). See *Barthel v. U.S. Dept. of Agriculture*, 181 F.3d 934, 935 (8th Cir. 1999). The relevant Swampbuster provisions, aimed at preserving wetland areas, denied eligibility for these federal programs if wetlands were converted to agricultural use. *Id.* However, the Act also allowed exemptions for wetlands that had been converted before the Act became effective in 1985. *Barthel v. U.S. Dept. of Agriculture, supra.* The Barthel hay pasture was classified as an "'other wetland area'" under the Act because it seasonally flooded or ponded but had been converted to agricultural use prior to December 23, 1985. *Barthel v. U.S. Dept. of Agriculture*, 181 F.3d at 936.

A dispute soon arose between the Barthels and the USDA and the National Resources Conservation Service (NRCS), a division of the USDA, as to how the Act affected the depth of the ditch. The Barthels contended that the land had been used for hay production and pasture prior to the Act and should be maintained in that state. Thus, they argued the ditch should be dredged to a depth that allowed the water to drain from the meadow and permitted hay production. *Barthel v. U.S. Dept.*

*of Agriculture, supra*. The NRCS, however, determined that the level of the ditch at the time of litigation should be preserved, no matter the effect on the Barthels' land. *Id*.

After making their way through the various administrative reviews of this determination, the Barthels eventually initiated suit in the U.S. District Court for the District of Nebraska. *Id*. In a memorandum opinion, the U.S. District Court affirmed the USDA's decision, concluding that the USDA appropriately construed the law and made adequate findings of fact.

Following the adverse decision from the federal district court, the Barthels appealed to the Eighth Circuit Court of Appeals. *Id*. The Eighth Circuit reversed the decision of the federal district court, finding that the USDA had misinterpreted the focus of the Swampbuster provisions, namely that the Act's purpose is to preserve wetlands or, if wetlands were altered, to preserve the altered conditions. *Barthel v. U.S. Dept. of Agriculture, supra*. The court held that the Barthels were entitled to utilize their land as they did before the Act, "'so long as the previously accomplished drainage or manipulation is not significantly improved upon, so that *wetland characteristics* are *further* degraded in a significant way.'" *Barthel v. U.S. Dept. of Agriculture*, 181 F.3d at 939 (emphasis in original), quoting *Gunn v. U.S. Dept. of Agriculture*, 118 F.3d 1233 (8th Cir. 1997). The matter was then remanded to the district court with directions that it remand the matter to the USDA for a hearing and determination of the state of the Barthels' land prior to the Act and the necessary dredging and cleaning of the ditch to maintain the land in its pre-Act state. *Barthel v. U.S. Dept. of Agriculture, supra*.

When the matter returned to the NRCS after remand, it conducted tests to determine the proper depth of the ditch. After those tests were completed, the NRCS concluded that the ditch could be dredged to the level directed by the 1994 injunction entered by the district court for Holt County, which level was at or below the level of the bottom of the culvert. This final determination by the NRCS was not appealed. Since that time, the Liermanns have used the USDA-commissioned survey when cleaning the ditch to the allowed depth.

In the time following the previous litigation, Keith, Dorothy's husband, died and Dorothy became sole owner of the Barthels' property. On December 16, 2011, Dorothy filed her operative complaint in the district court for Holt County. In her complaint, she alleged that the Liermanns failed to properly clean the ditch as required by § 31-224, preventing the flow of water through the ditch and causing her hay meadow to flood. Dorothy sought damages for lost hay profits, lost milk production profits, and costs to repair the land. Dorothy's complaint also included an additional count entitled "Interference With Easement" which related to a road that Dorothy utilized for ingress onto and egress from her property. This additional count is not at issue in this appeal and need not be discussed further.

Trial was held on March 27 and 28, 2012. Dorothy testified that her hay meadow had continued to experience consistent flooding. She attributed this flooding to the Liermanns' failure to properly clean their portion of the ditch. To support this claim, Dorothy introduced a number of photographs from various years which showed the flooded hay meadow. Dorothy also introduced photographs which she alleged depicted various obstructions to the waterflow at several locations in the Liermanns' portion of the ditch.

In addition to her own testimony, Dorothy also presented expert witness testimony from Don Etler, an agricultural engineer who specializes in agricultural drainage and wetlands. According to Etler, the NRCS made a number of mistakes when establishing the ditch grade that the Liermanns have since followed when cleaning the ditch. These alleged mistakes resulted in an irregular, sawtooth grade that, in Etler's opinion, an engineer would not produce in standard practice. Etler testified that this inconsistent grade created standing water in certain places. He proposed an alternative, gently sloping grade for the ditch which he believed would provide better drainage for the hay meadow.

On cross-examination, Etler conceded that he had not made any inspection of the ditch that would allow him to determine whether the Liermanns had been complying with cleaning the

ditch to the NRCS gradeline. In fact, Etler testified that he last visited the Barthels' property in 2000. When questioned about the Liermanns' cleaning of the ditch, Etler stated that it was important that they clean the ditch as required, but he also acknowledged that the entire drainage system, not just that portion located on the Liermanns' property, needed to be addressed in order for the hay meadow to properly drain.

Charles testified to the procedures the Liermann family utilized when cleaning the ditch. He stated that he cleans the ditch to comply with the NRCS survey in its current form. When the time comes to clean the ditch every year, Charles surveys the ditch himself, performs the necessary calculations to determine the depth, and then digs out or fills in the ditch accordingly. He indicated that he makes an effort to ensure the ditch is 8 feet wide to allow proper waterflow. Charles added that his family has hired companies to excavate the ditch in certain years, but that he has also done the cleaning himself in years where the ditch does not require extensive attention.

Charles offered evidence to show the yearly schedule of maintenance on the ditch since 1995. This document reflected that the ditch was surveyed every year during the March 1 to April 15 statutory period to determine whether maintenance was necessary. If maintenance was necessary, it was completed during the March 1 to April 15 statutory period, with the exception of 2006 and 2008, when the maintenance was performed on April 27 and April 22, respectively.

Following the parties' introduction of evidence, and upon agreement of the parties, the trial judge viewed the ditch in question. After viewing the premises, the court noted on the record that it had observed the ditch from the eastern end of the Liermanns' property to the northern part of the Barthels' hay meadow.

On July 16, 2012, the district court entered judgment in favor of the Liermanns on all counts. Among its findings, the district court concluded that § 31-224 did not mandate a continuing, yearlong obligation to keep the ditch clean. The court also concluded that Dorothy did not prove, by a preponderance of the evidence, that the Liermanns failed to perform their

statutory duty in cleaning the ditch. The court found that water was flowing through the ditch based on the evidence adduced at trial and its own observations of the ditch. For completeness, the court also addressed the issue of damages and found that Dorothy had not sufficiently proved any of her damage claims. Dorothy timely appealed from this order.

On January 26, 2013, while this current appeal was pending, Dorothy passed away. Craig, Keith, and Kerry have since been appointed as copersonal representatives of Dorothy's estate and have been substituted as the party plaintiffs. They proceed with the current appeal.

## ASSIGNMENTS OF ERROR

The Barthels argue that the district court abused its discretion by (1) finding that the Liermanns had complied with their obligations under § 31-224, (2) determining that the Barthels had failed to adequately prove damages, and (3) failing to award damages to the Barthels.

## STANDARD OF REVIEW

[1,2] The meaning and interpretation of a statute are questions of law. *Pinnacle Enters. v. City of Papillion*, 286 Neb. 322, 836 N.W.2d 588 (2013). An appellate court independently reviews questions of law decided by a lower court. *Fox v. Whitbeck*, 286 Neb. 134, 835 N.W.2d 638 (2013).

## ANALYSIS

*Should § 31-224 Be Interpreted to Require*
*Landowner to Perform Year-Round*
*Cleaning of Drainage Ditch?*

The Barthels claim that the Liermanns have failed to clean the ditch in compliance with § 31-224. This statute provides:

> It shall be the duty of landowners in this state, or tenants of such landowners when in possession, owning or occupying lands through which a watercourse, slough, drainage ditch or drainage course lies, runs or has its course, to clean such watercourse, slough, drainage ditch or drainage course at least once a year, between March 1 and April 15, of all rubbish, weeds or other substance

blocking or otherwise obstructing the flow of the water in such watercourse, slough, drainage ditch or drainage course, whenever such obstruction is caused by any of the acts of said owner or tenant, or with his knowledge or consent; *Provided, however*, this and sections 31-225 and 31-226 shall not apply to drainage ditches under control of any drainage company or corporation.

The Barthels interpret § 31-224 to require the Liermanns to clean the ditch throughout the year on an "'as needed'" basis in order to ensure proper waterflow. Brief for appellants at 12. The Barthels also argue that the district court erred in finding that the Liermanns properly cleaned the ditch when they undertook the yearly cleaning.

[3] When an appellate court confronts a statute, it gives statutory language its plain and ordinary meaning and will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. See *Blaser v. County of Madison*, 285 Neb. 290, 826 N.W.2d 554 (2013).

[4] As was the case for the parties' first appearance before this court, the outcome of this case hinges on our reading of § 31-224. The language of this statute has not been changed since our decision in 1993. See *Barthel v. Liermann*, 2 Neb. App. 347, 509 N.W.2d 660 (1993). When judicial interpretation of a statute has not evoked a legislative amendment, it is presumed that the Legislature has acquiesced in the court's interpretation. *State v. Policky*, 285 Neb. 612, 828 N.W.2d 163 (2013).

[5-7] Based upon our independent review of § 31-224, we reject the Barthels' proposed interpretation. This section clearly imposes upon a landowner the duty to clean a drainage ditch once a year, between March 1 and April 15. In § 31-224, the phrase "at least" prior to "once a year" indicates that a landowner may have a duty to clear the ditch more than once during the specified period of March 1 to April 15, if the flow of water again becomes obstructed during this period. However, nothing in the statute can be interpreted to require a landowner to clean a drainage ditch outside the March 1 to April 15 period if the flow of water becomes obstructed at any other time during the year.

We agree with the district court's finding that the statute does not mandate a continuing, yearlong obligation to keep the ditch clean. This assignment of error is without merit.

*Did Liermanns Comply With Their*
*Obligation to Clean Ditch?*

At trial, Charles gave extensive explanation of the procedures his family utilizes when cleaning out the ditch in order to comply with the statute and the previous injunction. He testified that every year, he surveys the ditch, calculates the necessary depth, and then excavates or fills the ditch as required according to the NRCS grade. Charles testified that his family hires a professional excavator to handle the cleaning when extensive work is necessary. A yearly schedule of the maintenance performed by the Liermanns on the ditch was also received in evidence.

Although Dorothy contended that the Liermanns had not properly cleaned the ditch, she failed to present evidence to contradict the Liermanns' evidence regarding their compliance with the statute. Dorothy did not offer evidence of the actual grade of the ditch after the Liermanns' annual maintenance in order to show whether they had complied with the statute or the NRCS survey. While Dorothy's photographic evidence showed a flooded hay meadow, these photographs showed the condition of the ditch outside of the required March 1 to April 15 cleaning period. Furthermore, Etler's testimony did not address whether the Liermanns had complied with their statutory duty; rather, his testimony focused on what he found to be problems with the NRCS survey establishing the grade in 2000 and the need for systemwide changes to the ditch. However, this issue was not before the district court.

Based on our review of the evidence, we conclude that the district court did not err when it determined that the Liermanns had complied with their obligation to clean the ditch.

*Damages.*

Having found that the Liermanns complied with their obligation to clean the ditch, we do not reach the Barthels' damages arguments. An appellate court is not obligated to engage

in an analysis that is not necessary to adjudicate the case and controversy before it. *State v. Pangborn*, 286 Neb. 363, 836 N.W.2d 790 (2013).

## CONCLUSION

Having determined that the district court properly construed § 31-224 and did not err when finding the Liermanns had complied with this section, we affirm the district court's judgment.

Affirmed.